**JOHN F. LEIBERT**, Plaintiff–Appellee, v. **FINANCE FACTORS, LIMITED**, Defendant–Appellant

NO. 13590

(CIV. NO. 84–1251)

MARCH 14, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED JUSTICE
NAKAMURA, ASSIGNED BY REASON
OF VACANCY

## OPINION OF THE COURT BY PADGETT J.

This is an appeal from a judgment in a case for unfair and deceptive business practices brought under HRS §§ 480–2 and 480–13. It is, in essence, a fraud case. We affirm in part and reverse in part and remand for the entry of an amended judgment.

The case below was tried before a judge, who entered findings of fact and conclusions of law. On appeal, appellant Finance Factors, Ltd. (appellant) challenges findings of fact 12, 13, 23, 25, 31 and 32, and conclusions of law 2, 3, 4, 7, 8, 9, 11, 12 and 13.

Appellant's brief, in the statement of questions presented, asks six questions. Those questions and our answers thereto are as follows:

A. Did the trial court err in concluding that the annual percentage rate ("APR") was misstated in the education plan contracts executed by class members?

**Answer.** No.

B. Did the trial court err in concluding that Finance Factor's ("FF's") conduct constituted a breach of contract and in awarding damages therefor?

**Answer.** Yes.

C. Did the trial court err in concluding that FF's conduct constituted unfair and deceptive acts and practices pursuant to HRS §§ 480–2 and 480–13 and in awarding damages thereunder?

**Answer.** No.

D. Did the trial court err in tolling the statute of limitations on grounds of fraudulent concealment under HRS § 657–20?

**Answer.** No.

E. Did the trial court abuse its discretion in granting Plaintiff's Motion for Certification of Class Action?

**Answer.** No.

F.   Did the trial court erroneously calculate Plaintiff's damages award?

**Answer.** Yes.

With respect to questions A and C, findings of fact 1 through 11, and 14 through 22, which are not specified as error pursuant to HRAP 28(b)(4)(C), and hence are unchallenged on this appeal, provide an adequate basis for challenged conclusions of law 2, 7 and 8, and for our answers to questions A and C above.

The factual picture painted by those findings is as follows:

Appellant advertised and sold, to parents of children going to private schools, an education plan which it represented to be "prepaid." Finding of Fact (FOF) 20. Appellant solicited the parents by direct mail, with advertising brochures, loan application forms, and a covering letter. FOF 4. The documentation of the transaction was prepared and handled by appellant. It sent the parents what it called "loan documents" which consisted of a retail installment contract form between the parent and the schools. When the parent had signed and returned this form to appellant, appellant had the school sign it. Appellant had a side deal with the schools which permitted it to pay the tuition in two installments. The "loan documents" however, charged the parents interest, at the stated rate in the documents, on the whole amount of the tuition from the inception of the school year. The schools, however, credited the parents' account only with the payments as they actually were made by appellant.

Appellant's express purpose in arranging for the advance of one–half of the tuition at the inception of the school period, and the other half later, was to increase the yield to appellant from the transaction. FOF 14. The agreement between appellant and the schools for the payment of the tuition in two installments was not disclosed to the parents, and the parents were thereby misled into believing that their child's education was paid for, and thus secure for the entire term bargained for, when in fact the education could

have been placed in jeopardy by a default in payment by appellant, prior to the second advance. FOF 21. Appellant was able to take monetary advantage of this situation by lending out the undis–bursed funds to others or by placing the funds in an interest–bearing account until the second advance. FOF 14.

Appellant has argued that these transactions were simply what they appeared to be on their face, retail installment contracts, made between the parents and the schools, which were assigned to appel-lant at what is, in effect, a discount, and that the parents have no interest in that discount, since they got what they bargained for. We cannot accept that argument. The plan originated with, was documented by, and carried out by appellant. The form it took, on paper, was appellant's choice. Appellant had deals with the schools before the contracts were sold to make the payments in installments. It did not disclose those deals to the parents at any time, and prepared papers which, based upon the annual percent-age rate therein, and the amount to be advanced, required the par-ents to pay interest on the whole amount of the tuition for the term from the beginning. The unchallenged findings of fact are that appellant set up the transaction, in the manner it did, to increase its gain therefrom, did not reveal its side deal with the schools to the parents, and thereby misled them.

Appellant's argument that this is really two transactions, not one, overlooks (1) the unchallenged findings of fact, as to how appellant engineered the deal, and the paperwork, and what its pur-poses in doing so were, and (2) the fact that appellant, in the very retail installment contracts which it prepared, recognized, and made provision for the possibility that the form might be disre-garded, and that the substance of the fact that there was a direct contract between the parents and appellant might be recognized, as the language from the contract quoted in finding of fact 7 clearly demonstrates.

The unchallenged facts establish that conclusion of law 2 is correct.

As to conclusion of law 7, the unchallenged findings of fact clearly support that portion of conclusion of law 7 which holds that appellant's actions were unfair and deceptive and violated HRS §§ 480–2 and 480–13.

Appellant however argues that even if it violated the Hawaii statutes prohibiting unfair and deceptive practices, the appellees lost nothing thereby, and hence no damages should be awarded, since appellees got the school services they bargained for, at the price they agreed to pay.

The court below found that if appellees had paid interest at the rates stated in the retail installment contract forms, on the amounts paid for tuition to the schools by appellant as those payments were actually made, the appellees would have paid $172,321.94 less interest than they actually paid. That amount was the basic damage figure found by the court below.

As we have said, this is in essence a fraud case. In 37 Am. Jur. 2d *Fraud and Deceit* § 342, at 458 (1968), it is stated:

> Thus, as a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded.

(Footnotes omitted.) In *Ellis v. Crockett*, 51 Haw. 45, 451 P.2d 814 (1969), we said, by way of dictum:

> The aim of compensation in deceit cases is to put the plaintiff in the position he would have been had he not been defrauded.

*Id.* at 52, 451 P.2d at 820.

The problem of how to measure damages, and how to establish them in fraud cases, is always a difficult one since the person defrauded has, because of the fraud, not pursued alternative courses of action, and the results of those untaken courses therefore remain speculative. In 3 Restatement (Second) of Torts (1977), a discussion of the problem of damages proof

appears under § 549. In the Comment to subsection (2) of that section, the following appears:

> When the plaintiff has made a bargain with the defendant, however, situations arise in which the rules stated in Subsection (1), and particularly that stated in Clause (a) of that Subsection, do not afford compensation that is just and satisfactory. . . .
>
> The frequency of these situations has led the great majority of the American courts to adopt a broad general rule giving the plaintiff, in an action of deceit, the benefit of his bargain with the defendant in all cases, and making that the normal measure of recovery in actions of deceit.

Under unchallenged findings of fact, the appellees thought that the tuition for their children was being prepaid by appellant. What the appellees bargained for, and thought they were receiving, was a finance charge based on that prepaid amount, at the annual percentage rates stated in the contracts. FOF 18. On the other hand, appellant knew, but did not disclose, that it, in fact, for the express purpose of increasing the yield to it (FOF 14), had made a side agreement with the schools allowing it to advance the tuition in two installments, thus enabling it to keep the use of the monies for the second installment until they were paid to the schools. Appellees therefore did not receive the value which they bargained for, and that value is properly measured by the difference in the amounts they paid as interest on the whole amount, at the stated percentage rate, and the amount they would have paid as interest at that stated percentage rate, had that amount been calculated upon the payments as, and when, actually made by appellant.

Accordingly, conclusion of law 7 is correct not only in holding appellant liable for unfair and deceptive business practices under HRS §§ 480–2 and 480–13, but in holding that there were recoverable damages resulting therefrom. The court below was also correct in entering conclusion of law 8, except to the extent, as will be discussed later, that it awarded prejudgment interest.

Question D is whether or not the court was correct in holding that the statute of limitations had been tolled by fraudulent concealment. The answer is found in the unchallenged findings of fact of the court below. The documentation of the transactions misled the appellees. FOF 21, 22. Appellee, and class representative, John F. Leibert discovered the fact of the dual advances in October of 1982, wrote appellant an anonymous letter about it, following which appellant made adjustments to the contracts for the 1982–1983 school year, but intentionally did not explain why it was making the adjustment, and made a decision not to make a refund for the prior years because of the expense involved. FOF 26 through 30. Given those findings, the conclusion of law of the court below was correct. Appellant does challenge findings of fact 31 and 32 which also support conclusion of law 9. In our view, on the record, those findings cannot be said to be clearly erroneous. Accordingly, the answer to question D has to be "No." Under HRS § 657–20 the statute of limitations in this case began to run on the date of discovery of the unrevealed side deal.

Question E is whether the trial court abused its discretion in granting the motion for certification of the class action. Appellant argues that affidavits were filed by some parents, who entered into contracts, indicating that they had knowledge of the installment payment arrangement. Whether that knowledge gave them an understanding of what it was that appellant was accomplishing, by the way it documented the transaction is a different question. Finding of fact 16 says that the matter was not disclosed to the parents and that finding is unchallenged. Finding of fact 17 notes that the matter, in the way it was presented, required specialized knowledge in order to be understood. Finding of fact 21 states, among other things, that the appellees were misled, as does finding of fact 22. In view of these unchallenged findings of fact, we cannot say that an abuse of discretion on the part of the trial court has been shown in certifying the class action. Accordingly the answer to question E is "No."

Question F is whether the trial court erroneously calculated appellees' damages award. Our answer is "Yes."

The judgment below was for $1,118,847.50. In reaching this amount the court below committed two errors. First, it allowed the appellees to recover the $172,321.94 plus three times that amount under HRS §§ 480–2 and 480–13. Thus, appellees recovered four times the actual damages. Since this was a suit in tort, and since there was no breach of the contract documents as executed, there could not be a recovery under the contract, and appellees were entitled only to triple, not quadruple damages. Conclusions of law 3 and 4 are therefore in error.

Secondly, the court below erred in awarding prejudgment interest and then in trebling that amount under HRS §§ 480–2 and 480–13. Prejudgment interest is awardable under HRS § 636–16 at the discretion of the court in certain circumstances. We discussed the statute and its legislative history in *Wiegand v. Colbert*, 68 Haw. 472, 718 P.2d 1080 (1986). As we pointed out there the purpose of the statute was to allow the court to designate the commencement date of interest in order to correct the injustice when a judgment is delayed for a long period of time for any reason, including litigation delays.

Here, we are dealing with the award of treble damages. Prejudgment interest on the amount of the overcharge as calculated by the court to the time of judgment was $124,889.95. Because the actual damages as found by the court and as affirmed by us are properly trebled under HRS Chapter 480, the appellees are entitled to damages of $516,964.92 which is $344,643.88 more than their actual damages. That being so, justice has been accomplished, and there was no occasion for the award of prejudgment interest, much less for tripling it.

However, in our view, on remand it would not be inappropriate under HRS § 636–16 to allow interest in the amended judgment from the date of the original judgment on the amount of $516,964.92.

Finally, we hold that findings of fact 12, 13, 22, 25, 31 and 32 were not clearly erroneous but were supported by substantial evidence.

We hold that appellees are not entitled to statutory attorney's fees in assumpsit under HRS § 607–14 and that therefore conclusion of law 11 is erroneous.

Conclusion of law 12 is however, correct and on remand the court below should determine the appropriate amount of attorney's fees to be paid by the appellant to the appellees.

Conclusion of law 13, as we have said, is erroneous.

There is much discussion in the briefs of the Federal "Truth in Lending Act," §§ 102 et seq., 15 U.S.C.A. §§ 1601 et seq., and of Regulation Z, 12 C.F.R. § 226, promulgated thereunder. The judgment below, however, was not based on that act and hence we are not called upon to construe it.

Reversed and remanded for the entry of an amended judgment and for the determination of reasonable attorney's fees and the determination of costs.

*Richard Clifton (Ann M. Misura* and *Ernest H. Nomura,* Cades Schutte Fleming & Wright; and *Sherman S. Hee* with him on the briefs) for appellant.

*Charles H. Witherwax (Herbert J. Leider* and *M. Tyler Potten-ger* with him on the brief; Charles Witherwax & Associates) for appellee.

On the amicus curiae briefs:

*Gordon M. Uechi* for Hawaii Bankers Association.

*Marvin S.C. Dang (Frank M. Salinger* and *Robert E. McKew* with him on the brief; Washington D.C.) for Hawaii Financial Services Association and American Financial Services Association.

## DISSENTING OPINION OF NAKAMURA, J.,
## WITH WHOM WAKATSUKI, J., JOINS

The plaintiffs in this case are 2,500 parents "who executed a total of 5,067 separate contracts [with private schools in Honolulu for installment payments of tuition] under Defendant Finance Factors prepaid education plan covering the school years 1971/72 through 1981/82." My colleagues in the majority conclude "there was no breach of the contract documents as executed [and] there could not be a recovery under the contract[s]." But they view this case as "a suit in tort" and affirm the award of treble damages to each member of the plaintiff class pursuant to Hawaii Revised Statutes (HRS) chapter 480, Monopolies; Restraint of Trade. The case, however, was tried and decided in the Circuit Court of the First Circuit as one involving violations of "The Truth in Lending Act," 15 U.S.C. 1601 et seq., and "The Credit Sales Act," HRS chapter 476. I conclude from a review of the record that the defendant was entitled to judgment because the passage of time extinguished the liability of the defendant, if any it had, before suit was filed, and I dissent.

### I.

The majority acknowledges "[t]here is much discussion in the briefs of the Federal 'Truth in Lending Act,' §§ 102 et seq., 15 U.S.C.A. §§ 1601 et seq., and of Regulation Z, 12 C.F.R. § 226, promulgated thereunder." But it concludes "[t]he judgment below . . . was not based on that act and hence [this court is] not called upon to construe it." The representatives of the plaintiff class, however, prosecuted the case on the basis that the defendant violated "the Truth in Lending Act . . . and the Hawaii State Retail Installment Act . . . , H.R.S. Chapter 476." That the trial court also treated the case as such is confirmed by the findings it entered. The

following are the salient Findings of Fact upon which its judgment is premised:

20. Finance Factors advertised and represented its education plan as "prepaid". In fact, the tuition was not prepaid in that only one–half was paid at the inception of the contract and the balance was paid at a later time, as aforesaid.

21. The contracts between Finance Factors and the schools further provided that in the event of a default by a parent in making installment payments to Finance Factors prior to the date of the second advance, then the second advance would not be made. This agreement between Finance Factors and the schools was not disclosed to the parents, either orally or in writing and was not mentioned in the contract [executed by the parents] as one of the remedies available in the event of default. The result of [the] agreement [between Finance Factors and the school] and its non–disclosure, coupled with the representation that the Finance Factors education plan was in fact "prepaid", misled the parents into believing that their child's education was paid for and thus secure for the entire term bargained for, when in fact that education could have been placed in jeopardy by a default in payment to Finance Factors prior to the second advance.

22. In addition, the parents were misled by the understated APR into believing that their Finance Factors prepaid education plan loan was obtained at a favorable annual percentage rate, and were thus dissuaded from doing any comparison shopping at other financial institutions.

23. Both the use of the term annual percentage rate and the standard method and formula for its computation were mandated by the Consumer Credit Protection Act, otherwise known as "Truth in Lending Act", enacted by

Congress of the United States and effective February 10, 1969, and Regulation Z promulgated by the Federal Reserve Board pursuant to its authority under the Truth in Lending Act, and revisions as they were in force through the 81/82 school year, the main purpose for the standardization of the annual percentage rate was to allow consumers to intelligently do comparison shopping for credit. This purpose was circumvented by the manner in which the Finance Factors prepaid education plan was administered and the intentional non–disclosures and mis–disclosures made thereunder.

These findings, of course, are consistent with the statement in the plaintiff–appellee's answering brief that "[t]his case involves a deliberate and intentional substantive circumvention of the Truth in Lending Act . . . and the Hawaii State Installment Sales Act . . . , HRS Chapter 476." And absent the finding that the purpose of the Truth in Lending Act was circumvented by the defendant, the judgment against it would be an unfounded one. For as the majority concludes, "there was no breach of the [retail installment contracts] as executed [and] there could not be recovery under the contract[s]."

## II.

The record thus confirms that the judgment against the defendant for treble damages stems from its purported failure to disclose Annual Percentage Rates of Interest as required by The Truth in Lending Act in 5,067 separate contracts executed between 1970 and 1982. By virtue of 15 U.S.C. § 1640 any action for "any actual damage sustained . . . as a result of the failure[]" of any creditor to comply with the Act must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(a) and (e). The action upon which judgment was awarded to the plaintiff class, however, was filed on October 22, 1984.

■■■■■■■■■■■■■■■■

Where a statute "creates a new liability and gives a special remedy for it, . . . upon well settled principles the limitations upon such liability become a part of the right conferred and compliance with them is . . . essential to the assertion and benefit of the liability itself." *United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 162 (1914) (citations omitted); *Atlantic Coast Line R. Co. v. Burnette*, 239 U.S. 199, 201 (1915). In other words,

> the limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only of the remedy but of the right also; the right to recover depends upon the commencement of the action within the time limit set by the statute, and if that period of time is allowed to elapse without the institution of the action, the right of action is gone forever. The statute is an offer of an action on condition that it be commenced within the specified time, and if the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist and the defendant is exempt from liability.

51 Am. Jur. 2d *Limitation of Actions* § 15, at 600 (1970) (footnotes omitted).

The record, as we observed, confirms that the plaintiff's action is premised on alleged violations of The Truth in Lending Act's requirement for disclosure of Annual Percentage Rates of Interest. A right of action for failing to disclose such rates, of course, did not exist at common law; the right was created by Congress. Thus "[t]he time element is an inherent element of the right so created, and such a provision will control, no matter in what form the action is brought." 51 Am. Jur. 2d, *supra*, § 8, at 596 (footnotes omitted). Since the "right to recover depend[ed here] upon the commencement of the action within the time limits set by

[The Truth in Lending Act and since] that period of time [was] allowed to elapse without the institution of the action, the right of action [was] gone forever [after 1983]." *First Sav. & Loan Assoc. v. First Fed. Sav. & Loan Assoc.*, 547 F. Supp. 988, 996 (D. Haw. 1982).

I would therefore vacate the judgment and remand the case for entry of a judgment in favor of the defendant.