31 P.3d 222

Steven T. HIRAGA, doing business as Hiraga Services, Lienor–Appellant,

v.

Gwendolyn L. BALDONADO, Owner–Appellee,

and

John Does 1–10 and Doe Entities 1–10, Respondents.

No. 23772.

Intermediate Court of Appeals of Hawai'i.

Aug. 21, 2001.

William J. Wynhoff, Honolulu, (Gerson Grekin & Wynhoff, of counsel), on the briefs, for Lienor–Appellant.

Kekuailohia M. Beamer, on the briefs, for Owner–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Lienor–Appellant Steven T. Hiraga, doing business as Hiraga Services (Hiraga), appeals Circuit Court Judge Karen N. Blondin's September 11, 2000 Judgment entered pursuant to the September 11, 2000 Order Granting Owner Gwendolyn L. Baldonado's Motion for Summary Judgment Against Lienor, Filed on July 20, 2000. We vacate the September 11, 2000 Judgment and the September 11, 2000 Order Granting Owner Gwendolyn L. Baldonado's Motion for Summary Judgment Against Lienor, Filed on July 20, 2000, and remand with instructions.

In this opinion, we conclude that: (1) the law does not permit a homeowner to waive the rights given to him or her by Hawai'i Revised Statutes (HRS) § 444–25.5 (Supp. 2000); (2) HRS §§ 444–25.5(d) and 480–12 (1993) do not preclude recovery in quantum meruit from the homeowner by the contractor who fails to comply with the requirements of HRS § 444–25.5; (3) the total of the amount of the recovery by the contractor in quantum meruit cannot exceed the net amount calculated as follows: (a) the amount that would have been due such general contractor under the contract had the contract not been void, (b) less (i) the amount previously paid to the general contractor and (ii) the total of the amounts paid and owed to all of the sub-contractors and materialmen who furnished labor or material in the improvement of the real property; and (4) together, HRS §§ 480–12 and 507–42 (1993) preclude the imposition of a HRS § 507–42 lien upon the homeowner's property by any contractor

who failed to comply with the requirements of HRS § 444–25.5.

## RELEVANT STATUTES

HRS § 444–22 (1993) prohibits an unlicensed contractor from "recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof[.]"

HRS § 444–25.5 (Supp.2000) states as follows:

Disclosure; contracts. (a) Prior to entering into a contract with a homeowner involving home construction or improvements and prior to the application for a building permit, licensed contractors shall:

(1) Explain verbally in detail to the homeowner all lien rights of all parties performing under the contract including the homeowner, the contractor, any subcontractor or any materialman supplying commodities or labor on the project;

(2) Explain verbally in detail the homeowner's option to demand bonding on the project, how the bond would protect the homeowner and the approximate expense of the bond; and

(3) Disclose all information pertaining to the contract and its performance and any other relevant information that the board may require by rule.

(b) All licensed contractors performing home construction or improvements shall provide a written contract to the homeowner. The written contract shall:

(1) Contain the information provided in subsection (a) and any other relevant information that the board may require by rule;

(2) Be signed by the contractor and the homeowner; and

(3) Be executed prior to the performance of any home construction or improvement.

(c) For the purpose of this section, "homeowner" means the owner or lessee of

residential real property, including owners or lessees of condominium or cooperative units.

(d) Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480, as well as the provisions of this chapter.

In comparison to HRS § 444–22, HRS §§ 480–12 and 480–13 (Supp.2000) state, in relevant part, as follows:

§ 480–12 Contracts void. Any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity.

§ 480–13 Suits by persons injured; amount of recovery, injunctions.

. . . .

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:

(1) May sue for damages sustained by the consumer and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit[.]

Section 16–77–79 of the Hawai'i Administrative Rules (HAR), as promulgated by the State of Hawai'i Department of Commerce and Consumer Affairs, states as follows:

Disclosure to owners. Contractors engaging in home improvement and renovation contracting shall prior to obtaining a binding contract from the homeowner:

(1) Disclose all information pertaining to the contract and its performance, the absence of which might mislead the homeowner to the homeowner's detriment including but not limited to lien right of labor, suppliers, and subcontractors;

(2) Provide the homeowner with a copy of the disclosure form on file with the board; [1]

---

1. The "DISCLOSURE OF LIEN RIGHTS" form approved by the Contractors License Board states, in relevant part, as follows:

*HOMEOWNERS TAKE NOTICE*
Any person who furnishes labor (prime or subcontractor) or materials (material supplier) for

(3) Disclose the approximate percentage of work to be subcontracted;

(4) Disclose whether the contractor is bonded or not and whether the owner has a right to demand bond; if not, the extent of financial security available to assure performance of the contract; and

(5) Disclose the contractor's license number and contractor classification.

(Footnote added.)

HRS § 507–42 (1993) states, in relevant part, as follows:

> **When allowed; lessees, etc.** Any person or association of persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof or if no price is agreed upon by the contracting parties, for the fair and reasonable value of all labor and materials covered by their contract, express or implied.

◼ Hiraga opposes the motion for the summary judgment that was entered. Therefore, we must view the facts in a light most favorable to Hiraga. *Crichfield v. Grand Wailea Co.*, 93 Hawai'i 477, 483, 6 P.3d 349, 355 (2000). Viewed in a light most favorable to Hiraga, the relevant facts occurred as follows:

| | |
|---|---|
| July 12, 1999 | Hiraga presented a written proposal to repair the residence of Owner–Appellee Gwendolyn L. Baldonado (Baldonado) for $63,000. Baldonado accepted on July 19, 1999. |

your home improvement or renovation project and is not paid can file a claim (lien) in court against your property. This is true even if *you* have paid the contract price in full to the prime contractor and the *contractor* fails to pay his subcontractors or material suppliers. . . . . If a lien is obtained, you are entitled to prove in a later court proceeding that you paid your prime contractor in full. The court could then

| | |
|---|---|
| August 31, 1999 | Hiraga and Baldonado entered into a Construction Contract. |
| November 16, 1999 | Hiraga and Baldonado agreed upon a $1,040 change order. |
| April 6, 2000 | Hiraga filed an application under HRS Chapter 507 for a mechanic's and materialman's lien in the principal amount of $25,110, plus interest, against Baldonado's residence. Hiraga also made demand for payment of said sums, plus attorney fees. |
| July 20, 2000 | Baldonado moved for a summary judgment on the ground that Hiraga failed to comply with the disclosure requirements of HRS § 444–25.5 and HAR § 16–77–79. |
| August 1, 2000 | Hiraga filed his memorandum in opposition. |
| August 17, 2000 | Baldonado filed her reply. |
| September 11, 2000 | The court entered its order granting summary judgment in favor of Baldonado. |
| September 11, 2000 | The court entered judgment in favor of Baldonado. |

## DISCUSSION

### A.

Hiraga contends that the circuit court's conclusion that there is no factual issue as to waiver is wrong.

◼ The City and County of Honolulu (City) was paying for Baldonado's renovations of her home in Kapolei. The City supplied the form of the contract and, before the contract was signed, Hiraga and Baldonado met with two representatives of the City. In his July 31, 2000 affidavit, Hiraga alleged, in relevant part, as follows:

> 6. [Hiraga], [Baldonado], and the City's representatives met for at least 40 minutes to discuss the contract terms. The discussion specifically included the issue of a surety bond. The parties and the City's representatives explained and discussed all

enter judgment in your favor against the prime contractor and direct payment out of the contractor's recovery fund up to the amount allowed by law, if the prime contractor was properly licensed at the time you entered into the contract with the prime contractor. . . . . The form then explains in detail what the homeowner can do to help prevent problems.

issues concerning lien rights and bonding required by HRS § 444–25.5. [Baldonado] waived her right to a bond and confirmed this in writing.

7. [Hiraga] completed more than 75% of the work called for by the contract. . . .

8. The amounts shown on the first two invoices were paid (less retention). However, after approving payment of the third invoice, [Baldonado] demanded that [Hiraga] perform additional work for free. [Hiraga] declined to do so. [Baldonado] then purported to revoke her approval and the City refused to pay.

. . . .

11. The lien amount of $25,110 is made up of the first 75% of the main contract, plus work completed but not yet billed, plus work on change order number 1. These amounts are summarized in the following table:

| | |
|---|---|
| Retention on Invoice 1 (10% of $15,750) | 1,575.00 |
| Retention on Invoice 2 (10% of $15,750) | 1,575.00 |
| Invoice 3 | 15,750.00 |
| Add'l work completed but not billed | 5,170.00 |
| Change Order # 1 | 1,040.00 |
| TOTAL | $25,110.00 |

In paragraph 6 of his July 31, 2000 affidavit, Hiraga alleged that "[Baldonado] waived her right to a bond and confirmed this in writing." The "writing" to which Hiraga refers is paragraph 4 of the *"GENERAL CONDITIONS OF THE CONTRACT"* as follows:

*Performance Bond:* Contractor shall execute and deliver to Owner and City within three (3) weeks after receipt of an executed copy of this contract, a good and sufficient bond, with corporate surety, in the penal sum of <u>N/A</u> DOLLARS ($ <u>N/A</u>) conditioned for his faithful performance of this contract and payment to all persons supplying labor and materials in the prosecution of the Work under this contract, at such time as they may be entitled to same.

In his opening brief, Hiraga admits and argues, in relevant part, that

[i]t is true that the contract form provided and required by the City does not meet the technical requirements of HRS § 444–25.5. Under the circumstances, however, there is at least an issue of fact as to whether [Baldonado] waived her right to written

disclosure under the statute. [Waiver] is an intentional relinquishment of a known right. *AOAO Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 705 P.2d 28 (1985). *See* HRS § 1–5: "[I]ndividuals may, in all cases in which it is not expressly or impliedly prohibited, renounce what the law has established in their favor, when such renunciation does not affect the rights of others, and is not contrary to the public good."

Two questions are presented. First, can a homeowner waive the rights given to him or her by HRS § 444–25.5? Second, if the answer to the first question is yes, is the homeowner's waiver of a bond a waiver of the rights given to him or her by HRS § 444–25.5? We do not reach the second question because the answer to the first question is no.

As noted above, the purpose of HRS § 444–25.5 is to have an informed homeowner who can and will avoid the double pay situations caused when the homeowner pays the prime contractor, the prime contractor does not pay the sub-contractors and/or materialmen, and the latter assert their lien rights against the homeowner. Conf. Com. Rep. No. 7 on H.B. No. 1874 (1975). In light of the purpose of HRS § 444–25.5 and the specific duties HRS § 444–25.5 explicitly imposes on "[a]ny licensed contractor entering into a contract involving home improvements[,]" we conclude that the law does not permit a homeowner to waive his or her rights specified therein.

**B.**

Does the combination of HRS §§ 480–12 and 444–25.5 preclude recovery in quantum meruit from the homeowner by the contractor who fails to comply with the requirements of HRS § 444–25.5 (2000)?

Hiraga argues that although HRS § 480–12 prohibits an action on the contract in law (damages) or in equity (specific performance), it does not prohibit an action in quasi contract (quantum meruit) for the value of the work performed but unpaid. Hiraga cites 66 Am.Jur.2d *Restitution and Implied Contracts* § 7 (1973), which states, in rele-

vant part, that "[u]nder proper circumstances, where an express contract is unenforceable the law may imply a promise." Hiraga ignores section 9 of the same authority which states, "A person may be prevented from obtaining restitution because of his criminal or other wrongful conduct in connection with the transaction on which his claim is based[.]"

Hiraga states that his "claim based on quasi contractual obligations is in the nature of assumpsit. *Schulz v. Honsador,* 67 Haw. 433, 435, 690 P.2d 279, 281 (1984). It is not, however, an action on the contract between [Hiraga] and [Baldonado]."[2] Hiraga cites the following quotation from *Sisson v. Ragland,* 294 Ark. 629, 745 S.W.2d 620, 622 (1988): "Quantum meruit is a claim for unjust enrichment which does not involve enforcement of a contract. A quantum meruit claim may succeed even where it is pursued in the alternative to a contract which is void."[3]

In a related situation, on the question of the right of a contractor to assert a right to set-off in response to a suit by a consumer for damages for breach of contract, this court has stated,

> [w]hile HRS § 480–13 does not specifically provide for a setoff in unfair and deceptive trade practice cases, under certain circumstances, we conclude that such a setoff is allowable. The supreme court has noted that in awarding damages under HRS § 480–13, the plaintiff should be placed in the position he or she would have held had he or she not been defrauded. *Leibert v. Finance Factors,* 71 Haw. 285, 788 P.2d 833, *reconsideration denied,* 71 Haw. 664, 833 P.2d 899 (1990). Correspondingly, while a plaintiff should be compensated for loss suffered, he or she should not be permitted to reap a benefit received from the defendant under the contract.

In *Majcher v. Laurel Motors,* 287 Ill. App.3d 719, 223 Ill.Dec. 683, 689, 680 N.E.2d 416, 422 (1997), the appellate court held that a plaintiff who sued under Illinois' Consumer Fraud and Deceptive Business Practices Act and rescinded the contract based on the defendant's deceptive practices should return "any consideration or property received" and "account for any benefits it received from the other party under the contract." While the Illinois court did not award a setoff to the defendant for mileage driven while the plaintiff had possession of the car because there was no evidence that the plaintiff in fact benefitted from having the car, the court approved the use of a setoff to "restor[e] ... the parties to their status before contracting." *Id.*

Similarly, a plaintiff cannot be unjustly enriched at a defendant's expense simply because the defendant is liable for unfair or deceptive trade practices.

*Davis v. Wholesale Motors, Inc.,* 86 Hawai'i 405, 421, 949 P.2d 1026, 1042 (App.1997).

*Davis* involved a consumer-plaintiff suing a motor vehicle dealer-defendant for damages caused by the dealer-defendant's unfair and deceptive trade practice. This court decided that the motor vehicle dealer-defendant was authorized to assert a set-off because the consumer-plaintiff should be placed in the position he would have held had he not been defrauded. The instant case differs in that the contractor who failed to comply with the requirements of HRS § 444–25.5 and thereby committed an unfair and deceptive trade practice is the plaintiff.

In *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 525 (1976), Wilson was an architect who had been previously licensed but was unlicensed at the time of his services solely because of his failure to pay the $15 annual renewal fee for two years. Notwithstanding the illegality of his services, Wilson

---

**2.** "Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations. *See* 1 Am.Jur.2d *Actions* § 11 (1962)." *Schulz v. Honsador,* 67 Haw. 433, 435, 690 P.2d 279, 281 (1984).

**3.** In *Sisson v. Ragland,* 294 Ark. 629, 745 S.W.2d 620, 622 (1988), Sisson was an unlicensed contractor who was barred by statute from enforcing the contract but who was permitted to sue for recovery in quantum meruit for the value of services he rendered to Ragland. It appears that Arkansas does not have a statute that goes as far as HRS § 444–22 (1993).

sued for the value of his architectural and engineering services. The Hawai'i Supreme Court held that:

> While the provisions of the statute [requiring] initial registration are clearly designed to protect the public from unfit and incompetent practitioners of architecture, we think that the provision requiring renewal, with which Wilson failed to comply, is purely for the purpose of raising revenues....
>
> ....
>
> ... [W]e do not believe that the legislature intended unenforceability in addition to the penal sanctions of § 464–14,[4] since unenforceability would result in a forfeiture wholly out of proportion to the requirements of public policy or appropriate individual punishment.
>
> ....
>
> ... While the public has a legitimate interest in assuming the collection of revenues, we think that the penal sanctions in the instant case are more than adequate to secure that interest. Additional punishment, especially a disproportionate forfeiture, is not justified and could not have been intended by the legislature.

*Id.* at 130–32, 551 P.2d at 529–30 (footnote added).

In *Wilson*, the only impediment to Wilson's right to sue was his two-year failure to pay a $15 annual license renewal fee, Wilson was subject to a criminal penalty for performing architectural services without a license, and unlike the unlicensed contractor situations covered by HRS § 444–22, no statute precluded recovery on the basis of the reasonable value of the work done.

In the instant case, Hiraga complied with the requirements of HRS §§ 444–25.5(1) and (2) but failed to comply with the requirements of HRS § 444–25.5(3). The combination of HRS §§ 444–25.5(d) and 480–12 caused the contract to be "void and ... not enforceable at law or in equity." The question is whether Hiraga is barred from seeking recovery in quantum meruit.

Hiraga notes that HRS § 444–22 pertaining to contractors states that no person shall recover "for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof, in a civil action, if such person failed to obtain a license under this chapter prior to contracting for such work." In Hiraga's view, the failure of HRS § 480–12 to similarly expressly "prevent such person from recovering for work done, ... on the basis of the reasonable value thereof, in a civil action" indicates that such recovery is not prohibited by HRS § 480–12.

We note a similar argument to the contrary. Although HRS § 480–12 voids the contract, HRS § 480–13(b) expressly permits a consumer who is injured by an unfair or deceptive act or practice to sue for damages sustained. It can be argued that the failure of HRS § 480–13(b) to permit the perpetrator of the unfair or deceptive act or practice to obtain quantum meruit recovery from the consumer indicates that such recovery is not permitted.

HRS § 444–25.5 requires the contractor to give the homeowner specific oral information and to obtain the homeowner's signature on a written form containing specified information printed in specified size type. The oral and written information pertain to the "lien rights of all parties performing under the contract" and "the homeowner's option to demand bonding on the project, how the bond would protect the homeowner and the approximate expense of the bond." Hiraga contends that the requirements of HRS § 444–25.5 are not of interest in the instant case because this is a dispute solely between the homeowner and the contractor. However, even assuming no sub-contractors are involved, there is no indication that no materialmen are involved. Moreover, HRS § 444–25.5 does not exempt from its requirements situations where neither sub-contractors or materialmen are involved.

Baldonado argues, in relevant part, as follows:

---

**4.** "Wilson's failure to remit the $15.00 renewal fee for two years already renders him liable to a fine of up to $500 and/or imprisonment for up to a year. HRS § 464–14." *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 131, 551 P.2d 525, 530 (1976).

If this Honorable Court allows Hiraga to recover in quasi contract, when Hiraga admittedly did not comply with the disclosure requirements as mandated which as a result rendered the contract void and unenforceable at law or in equity, this Honorable Court will be removing the force and affect [sic] of HRS Section 444–25.5 and HRS Section 480–12. If this appeal is granted, licensed contractors, like Hiraga, would never have to comply with the *verbal and written* requirements of HRS Section 444–25.5 requiring lien rights and bond disclosure for the protection of the consumer. In the alternative, licensed contractors like Hiraga could allege that they provided the verbal disclosure to the innocent consumer with no written confirmation in the contract. Then, licensed contractors and subcontractors, despite their failure to comply with the disclosure requirements, could always apply for mechanic's and materialman's liens and receive compensation under a theory of quasi contract, thus potentially forcing the innocent consumer to "double pay". This theory of recovery would be in total contravention of the intent of HRS Section 444–25.5 and would render HRS Section 444–25.5 and HRS Section 480–12 null and void regardless of the contractor's failure to comply with the disclosure requirements.

(Emphasis in original.)

Baldonado fails to note that Hiraga's violation of HRS § 444–25.5(3) subjects Hiraga to additional penalties. HRS § 444–23 (Supp. 2000) authorizes a maximum $5,000 fine and HRS § 444–17(2) (Supp.2000) authorizes a suspension of, revocation of, or refusal to renew his contractor's license.

As noted above, HRS § 480–13(b) expressly permits a consumer who is injured by an unfair or deceptive act or practice to sue for damages sustained and to be awarded not less than $1,000 or threefold damages, whichever is greater, plus reasonable attorney fees and costs of suit. Although authorization of treble damages expressly permits a disproportionate forfeiture, the limit is treble damages. In light of the availability to the homeowner of recovery from the contractor's

recovery fund pursuant to HRS § 444–28 (1993), the possibility of damages is reduced.

▮ In light of all of the relevant considerations pro and con discussed above and the fact that "[t]he basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor[,]" *Maui Aggregates, Inc. v. Reeder,* 50 Haw. 608, 610, 446 P.2d 174, 176 (1968), we conclude that HRS § 444–25.5(d) and HRS § 480–12 do not preclude some recovery in quantum meruit from the homeowner by the contractor who fails to comply with the requirements of HRS § 444–25.5. However, we further conclude that the total of the amount of the recovery by the contractor in quantum meruit cannot exceed the net amount calculated as follows: (a) the amount that would have been due such general contractor under the contract had the contract not been void, (b) less (i) the amount previously paid to the general contractor and (ii) the total of the amount paid and owed to all of the sub-contractors and materialmen who furnished labor or material in the improvement of the real property.

▮ We disagree with Baldonado that a consequence of our decision is that "licensed contractors and subcontractors, despite their failure to comply with the disclosure requirements, could always apply for mechanic's and materialman's liens and receive compensation under a theory of quasi contract, thus potentially forcing the innocent consumer to 'double pay[.]' "

As noted above, HRS § 507–42 states as follows:

**When allowed; lessees, etc.** Any person or association of persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof or if no price is agreed upon by the contracting parties, for

the fair and reasonable value of all labor and materials covered by their contract, express or implied.

 The following words in HRS § 507–42 are significant: "for the price agreed to be paid" and "for the fair and reasonable value of all labor and materials covered by their contract, express or implied." These words support the conclusion that

[a]lthough a mechanic's or materialman's lien is a creature of statute and not· of contract, yet it is dependent upon and does not exist in the absence of contract. There must be a contract with the owner.... It is necessary to allege the contractual relation. Otherwise the complaint would not show facts upon which a lien could be founded.

*Allen & Robinson v. Reist,* 16 Haw. 23 (1904).

In the instant case, HRS § 480–12 voids the Hiraga Baldonado contract. Therefore, Hiraga has no basis for, and is not permitted to assert, a HRS § 507–42 lien upon Baldonado's property.

## CONCLUSION

Accordingly, we vacate the September 11, 2000 Judgment and the September 11, 2000 Order Granting Owner Gwendolyn L. Baldonado's Motion for Summary Judgment Against Lienor, Filed on July 20, 2000, and remand for further proceedings consistent with the following conclusions: (1) the law does not permit a homeowner to waive the rights given to him or her by HRS § 444–25.5; (2) HRS §§ 444–25.5(d) and 480–12 do not preclude recovery in quantum meruit from the homeowner by the contractor who fails to comply with the requirements of HRS § 444–25.5; (3) the total of the amount of the recovery by the contractor in quantum meruit cannot exceed the net amount calculated as follows: (a) the amount that would have been due such general contractor under the contract had the contract not been void (b) less (i) the amount previously paid to the general contractor, and (ii) the total of the amounts paid and owed to all of the sub-contractors and materialmen who furnished labor or material in the improvement of the real proper-ty; and (4) together, HRS §§ 480–12 and 507–42 preclude the imposition of a HRS § 507–42 lien upon the homeowner's property by any contractor who failed to comply with the requirements of HRS § 444–25.5.