123 P.3d 691

**Bryan TONEY and Lilibeth Toney, Plaintiffs–Appellants,**

v.

**Lamoto "Ray" FAUHIVA, doing business as Hawaiian Isle Masonry, Defendant–Appellee.**

**No. 26693.**

Intermediate Court of Appeals of Hawai'i.

Oct. 28, 2005.

Mark Van Pernis (Van Pernis–Vancil), on the briefs, for Plaintiffs–Appellants.

Lamoto "Ray" Fauhiva, pro se, (Gregory K. Markham and Keith K. Kato, Chee & Markham, on the brief), for Defendant–Appellee.

BURNS, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiffs–Appellants Bryan Toney (Bryan) and Lilibeth Toney (collectively, the Toneys) appeal from the June 16, 2004 Final Judgment in favor of Defendant–Appellee Lemoto "Ray" Fauhiva (Fauhiva), and the July 14, 2004 Judgment awarding Fauhiva $8,245.25 for costs and $5,745.00 for attorney fees.[1] We affirm.

## BACKGROUND

The Toneys were owners of residential land located in the District of North Kona, Hawai'i, identified as Tax Map Key (3) 7–3–059:022 Lot 7–Q. During March 2002, the Toneys were in the process of constructing a residence on their property. They were operating pursuant to the "owner-builder" exception stated in Hawaii Revised Statutes (HRS) § 444–2(7) (Supp.2004). During this time, the Toneys entered into a contract with Fauhiva, a licensed masonry contractor. In the contract, Fauhiva agreed to construct a retaining wall on the Toneys' property. Fauhiva completed construction of the retaining wall in April 2002. Later that year, on August 20 or 21, the retaining wall collapsed.[2]

---

1. Judge Ronald Ibarra presided.

2. Plaintiff–Appellant Bryan Toney (Bryan) testified, in relevant part:

 Q. Now, was there any agreement at that first meeting whether you would pay him upon him presenting you with bills or statements, or pursuant to a written contract, or in cash? Was there any agreement in that respect?
 A. He said he needed to be paid in cash.
 . . . .
 Q. Did you in fact pay him cash?
 A. Yes, I did.
 . . . .
 Q. Were you working at that—prior to the collapse?
 A. Yes.
 Q. And how much were you making?

On December 10, 2002, the Toneys filed a Complaint, in the Circuit Court of the Third Circuit, seeking damages "including but not limited to the cost to [the Toneys] of clearing of collapsed wall(s) and rubble and excavation for replacement wall(s); labor and materials for the failed and replaced wall(s); payment for damages to adjoining residential property upon which the walls collapsed; costs and attorneys fees, for all of which [Fauhiva] is liable."

By leave of the circuit court, the Toneys, on July 16, 2003, filed their First Amended Complaint for Damages. In their First Amended Complaint, the Toneys contended *inter alia* that Fauhiva had failed to comply with the disclosure requirements imposed by HRS § 444–25.5 (Supp.2003). Specifically, they alleged:

9. The contracted matter and [Fauhiva] and [the Toneys'] relationship and activities referred to above are subject to and governed by Chapter 444 of the Hawaii Revised Statutes and particularly Section 444–25.5 thereof.

10. [Fauhiva] failed to comply with and violated Section 444–25.5 of the Hawaii Revised Statutes and is entitled to the relief provided thereby and by Chapter 480 of the Hawaii Revised Statutes.

11. Because of [Fauhiva's] violation of an [sic] failure to comply with Chapter 441[sic] and Section 444–25.5 thereof, [Fauhiva] has violated Chapter 480 of the Hawaii Revised Statutes, thereby entitling [the Toneys] to the relief provided by that Chapter.

A jury trial was held on February 24 and 25, and on March 2 and 3, 2004. At trial, at the conclusion of the Toneys' evidence, both parties moved for a directed verdict on the issue of the applicability of HRS § 444–25.5. The parties stipulated to the following: (1) the applicability of HRS Chapter 444 is solely a question of law; (2) the Toneys were owner-builders when they hired Fauhiva; (3) Fauhiva was a licensed contractor; and (4) HRS § 444–25.5 was not followed. Concluding that HRS Chapter 444 was not applicable, the circuit court orally granted Fauhiva's motion for directed verdict. The written order was filed on March 30, 2004.

On a special verdict form, the jury determined that Fauhiva was negligent in constructing the retaining wall, Bryan was negligent in connection with the construction of the retaining wall, Fauhiva's negligence was a 30 percent cause of the damages, and Bryan's negligence was a 70 percent cause of the damages. On June 16, 2004, the circuit court entered a Final Judgment that stated, in relevant part:

Pursuant to the March 30, 2004 Order granting [Fauhiva's] Motion for Directed Verdict with Respect to [the Toneys'] Hawaii Revised Statues [sic] § 444–25.5 Claims, the jury special verdict entered on

A. I make a hundred dollars a day, plus tips and fish money.
. . . .
Q. Okay. Could you explain what job position you have that paid you that amount of money at that time?
A. I crew on a boat. I'm a mate. Just take people fishing.

Defendant–Appellee Lemoto "Ray" Fauhiva (Fauhiva) testified in relevant part as follows:
Q . . . Is it not correct, Mr. Fauhiva, that you had an agreement with Mr. Toney to build a retaining wall on his property?
A We have agreement with Mr. Toney to build him a retaining wall.
Q And was that agreement for $6 a square foot plus Mr. Toney providing the materials?
A Yes. Plus fish.
. . . .
Q Plus fish. I see. How much fish were you supposed to get?
A Oh, lifetime supply.

Q Lifetime supply of fish. How many pounds a week?
A As much as he can.
. . . .
Q After you capped the wall, how many square feet did you determine that you built?
A I never measured the wall. It's him. He measured it and gave me the money.
Q Okay. And how much money was that?
A It was—the whole job is $5500.
Q The whole job?
A In labor itself.
Q That's the total of what you got?
A Yes.
. . . .
Q And you built three tiers?
A Yes.
. . . .
Q Did you intend the wall would only stay there for a few months, or longer?
A I built the wall to stay there forever.

March 3, 2004 and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. Final Judgment is entered in favor of [Fauhiva] with respect to all of [the Toneys'] claims and that [the Toneys] recover nothing herein.

2. All other claims asserted in **Civil No. 02–1–0229K** not specifically identified above are dismissed with prejudice.

3. There are no further claims or parties in **Civil No. 02–1–0229K.**

On April 7, 2004, Fauhiva filed a motion for an award of attorneys fees and costs. On June 10, 2004, the circuit court entered its Order Granting in Part [Fauhiva's] Motion for Costs and Attorneys' Fees awarding Fauhiva $8,245.25 for costs and $5,745.00 for attorney fees. A Judgment to this effect was entered on July 14, 2004.

The Toneys filed a notice of appeal on July 16, 2004. An amended notice of appeal was subsequently filed on July 20, 2004. The appeal was assigned to this court on December 20, 2004.

## POINTS ON APPEAL

In their opening brief, the Toneys contend:

A. The Circuit Court below erred in granting [Fauhiva's] motion for a directed verdict by its ORDER GRANTING DEFENDANT LEMOTO "RAY" FAUHIVA dba HAWAIIAN ISLE MASONRY'S MOTION FOR DIRECTED VERDICT WITH RESPECT TO PLAINTIFFS' HAWAII REVISED STATUES [sic] § 444–25.5 CLAIMS entered on March 3[0], 2004....

B. The Circuit Court below erred in denying PLAINTIFFS BRYAN TONEY AND LILIBETH TONEY'S MOTION FOR DIRECTED VERDICT, ... which was by implication denied by ORDER GRANTING DEFENDANT LEMOTO "RAY" FAUHIVA dba HAWAIIAN ISLE MASONRY'S MOTION FOR DIRECTED VERDICT WITH RESPECT TO PLAINTIFFS' HAWAII REVISED STATUES [sic] § 444–25.5 CLAIMS entered on March 3[0], 2004,....

C. The Circuit Court below erred in entering its Final Judgment entered on June 16, 2004, and its Judgment entered on July 14, 2004, by not including awards in [the Toneys'] favor as provided for by H.R.S § 444–25.5 and particularly subsection d) thereof, and H.R.S. Chapter 480.

## STANDARDS OF REVIEW

### Directed Verdict

 Hawai'i appellate courts review, *de novo,* a trial court's rulings on directed verdict or judgment notwithstanding the verdict (JNOV) motions. *In re Estate of Herbert,* 90 Hawai'i 443, 454, 979 P.2d 39, 50 (1999).

The test of the validity of a directed verdict is whether the evidence is such that, after giving to plaintiffs' evidence all value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor, it can be said that there is no evidence to support a jury verdict in plaintiff's favor.

*Lang v. Beech Aircraft Corp.,* 4 Haw.App. 237, 244, 663 P.2d 640, 644–45 (1983).

Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In deciding a motion for directed verdict or JNOV, the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and either motion may be granted only where there can be but one reasonable conclusion as to the proper judgment.

*Nelson v. Univ. of Hawai'i,* 97 Hawai'i 376, 393, 38 P.3d 95, 112 (2001) (brackets omitted) (quoting *Carr v. Strode,* 79 Hawai'i 475, 486, 904 P.2d 489, 500 (1995)).

### Statutory Interpretation

 Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

[When construing a statute,] our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

*Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation marks, brackets, and ellipses omitted) (quoting *Guth v. Freeland,* 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–95 (2001)).

## RELEVANT STATUTES

The title of HRS Chapter 444 (1993 & Supp.2002) is "**CONTRACTORS**". It states, in relevant part:

§ 444–2 **Exemptions.** This chapter shall not apply to:

. . . .

.(7) Owners or lessees of property who build or improve residential, farm, industrial, or commercial buildings or structures on property for their own use, or for use by their grandparents, parents, siblings, or children and who do not offer the buildings or structures for sale or lease; provided that this exemption shall not apply to electrical or plumbing work that must be performed only by persons or entities licensed under this chapter, or to the owner or lessee of the property if the owner or lessee is licensed under chapter 448E. In all actions brought under this paragraph, proof of the sale or lease, or offering for sale or lease, of the structure not more than one year after completion is prima facie evidence that the construction or improvement of the structure was undertaken for the purpose of sale or lease; provided that this provision shall not apply to residential properties sold or leased to employees of the owner or lessee; provided further that in order to qualify for this exemption the owner or lessee must register for the exemptions as provided in section 444–9.1. Any owner or lessee of property found to have violated this paragraph shall not be permitted to engage in any activities pursuant to this paragraph or to register under section 444–9.1 for a period of three years. There is a presumption that an owner or lessee has violated this section, when the owner or lessee obtains an exemption from the licensing requirements of section 444–9 more than once in two years[.]

. . . .

§ **444–9 Licenses required.** No person within the purview of this chapter shall act, or assume to act, or advertise, as general engineering contractor, general building contractor, or specialty contractor without a license previously obtained under and in compliance with this chapter and the rules and regulations of the contractors license board.

§ **444–9.1 Issuance of building permits; owner-builder registration.** (a) Each county or other local subdivision of the State which requires the issuance of a permit as a condition precedent to the construction, alteration, improvement, demolition, or repair of any building or structure shall also require that each applicant for such a permit file as a condition to the issuance of a permit a statement

that the applicant and all specialty contractors are licensed under this chapter, giving the license numbers and stating that the licenses are in full force and effect, or, if the applicant is exempt from this chapter, the basis for the claimed exemption; provided that if the applicant claims an exemption under section 444–2(7), the applicant shall also be required to certify that the building or structure is for the applicant's personal use and not for use or occupancy by the general public. Each county or local subdivision of the State shall maintain an owner-builder registration list which shall contain the following information: (1) the name of any owner or lessee who claims an exemption from this chapter as provided in section 444–2(7); (2) the address of the property where exempt building or improvement activity is to occur; (3) a description of the type of building or improvement activity to occur; (4) the approximate dates of construction activity; and (5) whether any electrical or plumbing work is to be performed and if so, the name and license number of the person or entity who will do the work. The absence of such registration is prima facie evidence that the exemption in section 444–2(7) does not apply.

(b) The county shall verify the license against a list of licensed contractors provided by the state contractors licensing board, which list shall be updated at least quarterly. The county shall also verify that the applicant is in fact the contractor so licensed or the contractor's duly authorized agent.

(c) To qualify for the exemption under section 444–2(7), the county shall provide the applicant with a disclosure statement in substantially the following form:

"Disclosure Statement

State law requires construction to be done by licensed contractors. You have applied for a permit under an exemption to that law. The exemption provided in section 444–2(7), Hawaii Revised Statutes, allows you, as the owner or lessee of your property, to act as your own general contractor even though you do not have a license. You must supervise the construction yourself. You must also hire licensed subcontractors. The building must be for your own use and occupancy. It may not be built for sale or lease. If you sell or lease a building you have built yourself within one year after the construction is complete, the law will presume that you built it for sale or lease, which is a violation of the exemption, and you may be prosecuted for this. It is your responsibility to make sure that subcontractors hired by you have licenses required by state law and by county licensing ordinances. Electrical or plumbing work must be performed by contractors licensed under chapters 448E and 444, Hawaii Revised Statutes. Any person working on your building who is not licensed must be your employee which means that you must deduct F.I.C.A. and withholding taxes and provide workers' compensation for that employee, all as prescribed by law. Your construction must comply with all applicable laws, ordinances, building codes, and zoning regulations. If you violate section 444–2(7) you may be fined $5,000 or forty per cent of the appraised value of the building as determined by the county tax appraiser, whichever is greater, for the first offense; and $10,000 or fifty per cent of the appraised value of the building as determined by the county tax appraiser, whichever is greater for any subsequent offense."

The county shall not issue a building permit to the owner-applicant until the applicant signs a statement that the applicant has read and understands the disclosure form.

(d) A county building inspector or other building official shall report to the regulated industries complaints office the name and address of any person, who, in the opinion of the building inspector or official, has violated this chapter by accepting or contracting to accomplish work which would classify the person as a contractor under this chapter.

. . . .

§ 444–25.5 **Disclosure; contracts.** (a) Prior to entering into a contract with a homeowner involving home construction or improvements and prior to the application for a building permit, licensed contractors shall:

 (1) Explain verbally in detail to the homeowner all lien rights of all parties performing under the contract including the homeowner, the contractor, any subcontractor or any materialman supplying commodities or labor on the project;

 (2) Explain verbally in detail the homeowner's option to demand bonding on the project, how the bond would protect the homeowner and the approximate expense of the bond; and

 (3) Disclose all information pertaining to the contract and its performance and any other information that the board may require by rule.

(b) All licensed contractors performing home construction or improvements shall provide a written contract to the homeowner. The written contract shall:

 (1) Contain the information provided in subsection (a) and any other relevant information that the board may require by rule;

 (2) Be signed by the contractor and the homeowner; and

 (3) Be executed prior to the performance of any home construction or improvement.

(c) For the purpose of this section, "homeowner" means the owner or lessee of residential real property, including owners or lessees of condominium or cooperative units.

(d) Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480, as well as the provisions of this chapter.

## DISCUSSION

■ The Toneys challenge the circuit court's decision that HRS Chapter 444–25.5 is inapplicable in this case. In support of their contention that HRS § 444–25.5 is applicable, the Toneys rely on this court's prior holdings in *Hiraga v. Baldonado,* 96 Hawai'i 365, 31 P.3d 222 (App.2001), and *Jones v. Phillipson,* 92 Hawai'i 117, 987 P.2d 1015 (App.1999).

In *Hiraga,* the first issue was whether a licensed general contractor who failed to comply with the disclosure requirements of HRS § 444–25.5 was precluded from recovering in *quantum meruit* for work performed according to contract. *See Hiraga,* 96 Hawai'i at 372, 31 P.3d at 229. The answer was no.

In *Hiraga,* the second issue was whether a licensed contractor who failed to comply with the disclosure requirements of HRS § 444–25.5 was authorized to impose an HRS § 507–42 lien (for supplying labor and/or material) to the homeowner's property. For the following reason, the answer was no. HRS § 444–25.5(d) says that any violation of it "shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480[.]" HRS § 480–12 says that contracts in violation of HRS Chapter 480 are void. Thus, when contractor Hiraga violated HRS § 444–25.5, he also violated HRS § 480–12 and thereby voided the contract. Consequently, Hiraga was not authorized to impose an HRS § 507–42 lien on Baldonado's property.

In *Jones,* the issue before this court was whether an owner-builder's violation of the conditions for exemption contained in HRS § 444–2(7) prevented the owner-builder from bringing suit against an unlicensed contractor for breach of contract. *See Jones,* 92 Hawai'i at 127–28, 987 P.2d at 1025–26. The answer was no.

In the instant case, the construction of the Toneys' house and the subject retaining wall was being done by the Toneys pursuant to the owner-builder exemption stated in HRS § 444–2(7). This owner-builder exemption allows owners or lessees of property to act as their own general contractor without having to satisfy the licensing requirements imposed by HRS Chapter 444, so long as the structures or improvements built are for their or their close relative's personal use. *Jones,* 92 Hawai'i at 126, 987 P.2d at 1024.

The plain language of HRS § 444–2(7) states that HRS Chapter 444 "shall not apply to" "[o]wners or lessees of property who build or improve residential, farm, industrial, or commercial buildings or structures on property for their own use[.]" Clearly, that language means that the owner-builder is not required to comply with the requirements of HRS § 444–9 quoted above. On the other hand, it clearly does not mean that HRS § 444–9.1 quoted above does not apply to owner-builders. Does it mean that licensed subcontractors the owner-builder may or must hire, pursuant to HRS §§ 444–2(7) and –9.1, must comply with § 444–25.5 quoted above when dealing with owner-builders? In light of the language in HRS § 444–9.1 using the word "owner-builder", stating that the owner-builder is acting as his own general contractor even though he does not have a license, that the owner-builder must supervise the construction himself, that the owner-builder's construction must comply with all applicable laws, ordinances, building codes, and zoning regulations, and that "[t]he county shall not issue a building permit to the owner-applicant until the applicant signs a statement that the applicant has read and understands the disclosure form[,]" and the language in HRS § 444–25.5 that the disclosure it requires must be done "prior to the application for a building permit," we conclude that the answer is no.

In other words, although owner-builders do not have most of the burdens imposed by HRS Chapter 444, they also do not have the benefits and protections of HRS Chapter 444. Therefore, pursuant to HRS § 444–2(7), the Toneys did not have the benefit of and, as to the Toneys, Fauhiva was not obligated to comply with the provisions of HRS § 444–25.5.

## CONCLUSION

Accordingly, we affirm the March 30, 2004 Order Granting Defendant Lemoto "Ray" Fauhiva dba Hawaiian Isle Masonry's Motion for Directed Verdict, the June 16, 2004 Final Judgment, and the July 14, 2004 Judgment.