141 P.3d 996

808 DEVELOPMENT, LLC, Lienor–
Appellant/Cross–Appellee,

v.

Glenn Nobuki MURAKAMI and Ann Sue
Isobe, Respondents–Appellees/Cross–
Appellants,

and

Joseph E. Spadaro aka Joseph Elio Spada-
ro, individually and as Trustee under
that certain Declaration of Trust dated
October 3, 2000, John Nelson Spadaro;
Jim Hogg; Lisa Hogg; and American
Savings Bank, F.S.B., Respondents–Ap-
pellees,

and

John Does 1–10; Jane Does 1–10; Doe
Partnerships 1–10; Doe Corporations 1–
10; Doe Entities 1–10; and Doe Govern-
mental Units 1–10, Respondents.

No. 26610.

Supreme Court of Hawai'i.

Aug. 14, 2006.

As Corrected Sept. 7, 2006.

Karin L. Holma and Amara Harrell (of Bays, Deaver, Lung, Rose & Baba), Honolulu, on the briefs, for lienor-appellant/cross-appellee 808 Development LLC.

Gary Victor Dubin, Honolulu, on the briefs, for respondents-appellees/cross-appellants Glenn Nobuki Murakami and Ann Sue Isobe.

Michael C. Bird and Brandon U. Davidson, Honolulu, on the briefs, for respondent-appellee American Savings Bank.

MOON, C.J., LEVINSON, ACOBA, and DUFFY, JJ.; and Intermediate Court of Appeals Associate Judge WATANABE, in place of NAKAYAMA, J., recused.

Opinion of the Court by MOON, C.J.

Lienor-appellant 808 Development, LLC [hereinafter, 808 Development] appeals from the Circuit Court of the First Circuit's [1] (1) July 20, 2004 final judgment dismissing 808 Development's mechanic's lien application [hereinafter, lien application] made against property owned by respondents-appellees Glenn Nobuki Murakami and Ann Sue Isobe [hereinafter, collectively, Owners] and (2) October 28, 2004 amended final judgment granting costs to Owners in the amount of $2,399.31. Owners cross-appeal from the circuit court's October 28, 2004 amended final judgment denying their request for attorneys' fees. The instant action also named, *inter alia*,[2] respondent-appellee American Savings Bank (ASB), which allegedly held a security interest in the property as one of Owners' lenders. The circuit court dismissed the lien application on the sole basis that 808 Development had not complied with the statutory notice requirements for contractors regarding lien and bond issues under Hawai'i Revised Statutes (HRS) § 444–25.5 (Supp. 2000), quoted *infra*.

On appeal, 808 Development asserts that the circuit court erred in dismissing its lien application because: (1) it disregarded the legislature's intent in enacting Hawaii's mechanic's lien statute, HRS § 507–42 (1993), quoted *infra*, and HRS § 444–25.5; (2) its

---

1. The Honorable Victoria S. Marks presided over the proceedings.

2. The action was also brought against respondents-appellees Jim and Lisa Hogg, as well as John and Joseph Spadaro, all of whom were only minimally involved in the circuit court proceedings and did not submit answering briefs on appeal.

ruling is inconsistent with *Hiraga v. Baldonado*, 96 Hawai'i 365, 31 P.3d 222 (App.2001); and (3) the dismissal of its lien application was "absurd and unjust." 808 Development also asserts that the circuit court erred in denying its request for a continuance of the probable cause hearing on the lien application pursuant to HRS § 507–43(a) (1993)[3] and Hawai'i Rules of Civil Procedure Rule (HRCP) Rule 56(f) (2004).[4]

In their cross-appeal, Owners assert that the circuit court erred in denying their request for attorneys' fees pursuant to (1) HRCP Rule 11, which was based on their allegation that 808 Development's filing of its lien application was "frivolous, wholly lacking in any factual or legal support" and (2) HRS §§ 607–14 (Supp.2004), quoted *infra,* and – 14.5 (Supp.2004), quoted *infra,* as the prevailing parties and as against frivolous claims, respectively. Based on the discussion below, we affirm the circuit court's July 20, 2004 final judgment dismissing 808 Development's lien application and October 28, 2004 amended final judgment denying Owners' request for attorneys' fees.

## I. BACKGROUND

### A. Factual History

The following salient facts are undisputed. Michael Sakatani is the sole member of 808 Development. Sakatani and Murakami were members of Kiwi Kahala, LLC (Kiwi), a limited liability company that was formed to purchase, develop, and sell high-end real estate. Other Kiwi members included Kenneth Vu and Naoto Lathrop. In late 1999, Kiwi purchased real property located at 4902 Kahala Avenue [hereinafter, the subject property] in Vu's name, which Kiwi planned to develop. On April 6, 2000, Kiwi hired 808 Development to construct a high-end residence on the subject property. Construction began on July 31, 2000. On October 8, 2000, Owners acquired title to the subject property from Vu. Pursuant to a construction agreement, dated January 1, 2001, Owners hired 808 Development to construct improvements on the subject property for $1,830,500; construction pursuant to January 1, 2001 agreement began at some point thereafter. The January 1, 2001 construction agreement did not include written notices and disclosures regarding lien and bond issues as required under HRS § 444–25.5.[5]

808 Development alleges that, on August 30, 2001, 808 Development and Owners entered into an amended construction agreement that addressed the lien and bond issues. However, Owners denied entering into an amended agreement, and 808 Development was unable to produce a signed amended contract. According to 808 Development, it stopped work on the project after Owners allegedly failed to pay as required by the construction agreement. 808 Development alleges that Owners owe $1,830,500.00 "less payments made" for materials, equipment, and labor costs incurred through April 30, 2003. Owners allege that, because the "payments made" total more than two million dollars, they do not presently owe any money to 808 Development. It is unclear from the record the actual amount presently owed by Owners, if any, to 808 Development.

---

3. HRS § 507–43(a) provides in pertinent part that:

 The Application [for a mechanic's lien] and Notice shall be returnable not less than three nor more than ten days after service. On the return day, a hearing shall be held by the court to determine whether probable cause exists to permit the lien to attach.... The return day hearing may be continued at the order of the court so that the entire controversy need not be determined on the originally scheduled return day.

4. HRCP Rule 56(f) provides in pertinent part that the circuit court may "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had[.]"

5. In its memorandum in opposition to Owners' motion to dismiss the lien application, 808 Development stated that the original construction contract between 808 Development and Kiwi was signed in 2000; however, the first page of the contract, along with the architect specifications, were later replaced with pages dated in 2001 to satisfy potential lenders. According to 808 Development, the original pages that were removed from the 2000 contract were discarded. 808 Development concedes that "the [2000] contract did not contain the lien and bond disclosures required under HRS § 444–25.5." Thus, the existence of the original 2000 contract between Kiwi and 808 Development is of no consequence to the instant appeal. Thus, hereinafter, any reference to the construction agreement or contract means the January 1, 2001 contract between Owners and 808 Development.

B. *Procedural History*

On January 16, 2004, 808 Development initiated the instant mechanic's lien action by filing its lien application with the circuit court. Owners and ASB were served with a notice of the lien application that indicated a return date of January 22, 2004. On January 26, 2004, 808 Development filed a notice that a probable cause hearing was set for March 2, 2004. On February 4, 2004, 808 Development moved to continue the probable cause hearing, pursuant to HRS § 507–43(a) and HRCP Rule 56(f), *see supra* notes 3 and 4, arguing that it required additional time to complete discovery and prepare for the hearing. The continuance was denied, and the hearing proceeded as scheduled on March 2, 2004.

Meanwhile, on February 10, 2004, Owners moved to dismiss the action for lack of subject matter jurisdiction, pursuant to, *inter alia*, HRCP Rule 12(h)(3) (2004),[6] for failure to comply with HRS § 444–25.5, and requested attorneys' fees and costs against 808 Development. On the same day, Owners filed a certificate of service, indicating that they had served a notice on 808 Development of their intent to file a motion for HRCP Rule 11 sanctions against 808 Development and its attorney.

At the probable cause hearing on March 2, 2004, the circuit court also heard argument on Owners' motion to dismiss the lien application. During the hearing, ASB informed the court of a companion case involving 808 Development and Owners in which the equitable interest of 808 Development was at issue. ASB expressed its concern that, if the lien were permitted to attach and relate back to the July 2000 construction date, ASB would lose its lien priority as holder of the first mortgage on the property because it recorded the mortgage in October 2000. The court was also informed that a foreclosure action had been filed and that Owners had obtained a $3.6 million dollar loan to "take out all the liens to stop the foreclosure." ASB requested that the court dismiss the lien application so as not to affect its lien priority, noting that 808 Development could refile its lien application at a later date if it found the signed amended contract. The circuit court orally ruled in favor of Owners and dismissed the lien application, but informed 808 Development that "[i]t doesn't affect your rights under quantum meruit. If you can find a signed contract providing . . . lien and bonding rights, you're free to refile." On May 5, 2004, the order granting Owners' motion to dismiss the lien application was entered, stating that 808 Development had "failed to present evidence that it had complied with the written disclosure requirements of [HRS § 444–25.5] as interpreted by the Intermediate Court of Appeals [ (ICA) ] in *Hiraga v. Baldonado*, 96 Hawai'i 365, 31 P.3d 222 ( [A]pp.2001)[.]" In a separate order entered on the same day, the circuit court denied Owners' motion for Rule 11 sanctions, stating that "it appears to the court that [808 Development] . . . argued for a good faith extension of the law set forth in [*Hiraga* ]."

On July 20, 2004, the circuit court entered a final judgment, dismissing 808 Development's lien application, pursuant to HRCP Rule 58 (2004).[7] Thereafter, on July 30, 2004, Owners moved for an award of costs and fees in the amount of $38,183.15, pursuant to HRCP Rules 7(b) and 54(d) (2004),[8] and HRS § 607–14.[9] In addition, Owners

---

**6.** HRCP Rule 12(h)(3) states that, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

**7.** HRCP Rule 58 provides in pertinent part that "[e]very judgment shall be set forth on a separate document."

**8.** HRCP Rule 7(b), entitled "Motions and other papers," provides in relevant part:

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds there-

for, and shall set forth the relief or order sought.

. . . .

(3) All motions shall be signed in accordance with Rule 11.

HRCP Rule 54(d) provides in pertinent part:

(1) COSTS OTHER THAN ATTORNEYS' FEES. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]

(Capital letters in original.)

**9.** HRS § 607–14 provides in pertinent part:

separately moved for partial reconsideration and/or clarification and/or to set aside and amend the July 20, 2004 final judgment with regard to an award of costs and attorneys' fees against 808 Development, pursuant to the same authorities.[10] On August 24, 2004, ASB submitted a memorandum regarding Owners' motion for attorneys' fees, notifying Owners of its intent to demand that Owners reimburse ASB $2,000.00 for its attorneys' fees and costs incurred if Owners prevailed on their motion.

On October 28, 2004, the circuit court granted in part and denied in part Owners' motion for reconsideration of the July 20, 2004 final judgment, awarding costs in the amount of $2,399.31 and denying the request for attorneys' fees. An amended final judgment was also entered on the same day, reflecting the award of costs and dismissal of all other claims.

On November 26, 2004, Owners timely filed a notice of appeal from the October 28, 2004 amended final judgment, challenging the denial of its request for attorneys' fees,

> **Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]
>
> (Emphasis in original.)

**10.** It should be noted that, on June 4, 2004, 808 Development appealed the dismissal of its lien application, which was docketed as appeal No. 26610, prior to the entry of the final judgment in this case. Moreover, the time for filing the notice of appeal was extended as a result of the Owners' post-judgment motions. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(3) (2004) ("If, not later than 10 days after entry of final judgment, any party files a motion that seeks to reconsider, vacate, or alter the judgment, or seeks attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion[.]"). *See also infra* note 12.

**11.** Owners' appeal is actually a cross-appeal to 808 Development's appeal in No. 26610. *See* HRAP 4.1(a) and (b) (2004). On December 14, 2004, 808 Development filed a notice of cross-appeal in appeal No. 26972, appealing the same October 28, 2004 order that it challenges in appeal No. 26610, which is superfluous.

which was docketed as appeal No. 26972.[11] 808 Development's premature notice of appeal, *see supra* note 10, is considered filed on July 20, 2004, when the judgment dismissing the lien application was entered. HRAP Rules 4(a)(2) and 4(a)(3).[12]

## II. STANDARDS OF REVIEW

### A. Motion for Summary Judgment [13]

■ A circuit court's grant or denial of summary judgment is reviewed *de novo*, under the same standard applied by the circuit court. *Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992)).

■ As we have often articulated[,] [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

**12.** HRAP Rule 4(a) provides in pertinent part that, "[i]n any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." Consequently, 808 Development's "amended notice of appeal," filed on August 10, 2004, is superfluous.

808 Development also filed a notice of pendency of action with this court on October 28, 2004. On December 1, 2004, Owners subsequently moved to expunge the notice of pendency of action, which appellee John Spadaro joined on December 3, 2004. This court granted the motion to expunge the notice of pendency of action via order entered on February 18, 2005 and amended on February 22, 2005. Thereafter, on March 4, 2005, this court, *sua sponte*, consolidated appeal Nos. 26610 and 26972 under No. 26610.

**13.** Inasmuch as the probable cause hearing regarding 808 Development's lien application was consolidated with the hearing on Owners' motion to dismiss, the circuit court considered evidence outside the pleadings, rendering its dismissal more akin to a grant of summary judgment. Thus, the standard of review for summary judgment appears appropriate under the circumstances of this case.

and that the moving party is entitled to judgment as a matter of law.

A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.... The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion].

*Dairy Road Partners v. Island Ins. Co.*, 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000) (citations and internal quotation marks omitted).

### B. *Statutory Interpretation*

■ "The interpretation of a statute is a question of law reviewable *de novo.*" *Gray v. Admin. Dir. of the Court*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (internal quotation marks and citations omitted).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists[.]

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Aluminum Shake Roofing, Inc. v. Hirayasu*, 110 Hawai'i 248, 251–52 131 P.3d 1230, 1233–34 (2006) (citation omitted) (format altered).

### C. *Motion for Continuance*

■ A [circuit] court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion. Additionally, the request must demonstrate how postponement of a ruling on the motion will enable him or her, by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact. An abuse of discretion occurs where the [circuit] court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Josue v. Isuzu Motors Am., Inc.*, 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (citations, internal quotations marks, and brackets omitted).

### D. *Attorneys' Fees*

■ This court reviews a circuit court's grant or denial of attorney's fees under the abuse of discretion standard, *Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005), including fees requested pursuant to HRS §§ 607–14 and –14.5. *Piedvache v. Knabusch*, 88 Hawai'i 115, 118, 962 P.2d 374, 377 (1998).

### E. *Rule 11 Motion*

■ "All aspects of a HRCP Rule 11 determination should be reviewed under the abuse of discretion standard." *Lepere v. United Pub. Workers, Local 646*, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995) (citation omitted).

### III. *DISCUSSION*

■ Mechanic's liens are purely statutory, and a lien will not attach automatically. *Jack Endo Elec., Inc. v. Lear Siegler, Inc.*, 59 Haw. 612, 615, 585 P.2d 1265, 1268–69 (1978). Hawaii's mechanic's lien statute, HRS § 507–42, provides in pertinent part:

**When allowed; lessees, etc.** Any person or association of persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, <u>for the price agreed to be paid</u> (if the price does not exceed the value of the labor and materials), or if the price

exceeds the value thereof or if no price is agreed upon by the contracting parties, <u>for the fair and reasonable value of all labor and materials covered by their contract,</u> express or implied.

(Bold emphasis in original.) (Underscored emphases added.) However, under HRS § 444–25.5:

(a) *Prior to entering into a contract* with a homeowner involving home construction or improvements and prior to the application for a building permit, licensed contractors shall:

(1) *Explain verbally in detail to the homeowner all lien rights* of all parties performing under the contract including the homeowner, the contractor, any subcontractor or any materialman supplying commodities or labor on the project;

(2) *Explain verbally in detail the homeowner's option to demand bonding* on the project, how the bond would protect the homeowner and the approximate expense of the bond; and

(3) *Disclose all information pertaining to the contract and its performance* and any other relevant information that the [contractors license] board may require by rule.

(b) *All licensed contractors performing home construction or improvements shall provide a written contract to the homeowner.* The written contract shall:

(1) Contain the information provided in subsection (a) and any other relevant information that the board may require by rule;

(2) Be *signed by the contractor and the homeowner;* and

(3) Be *executed prior to the performance of any home construction or improvement.*

(c) For the purpose of this section, "homeowner" means the owner or lessee of residential real property, including owners or lessees of condominium or cooperative units.

(d) *Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480,* as well as the provisions of this chapter.

(Emphases added.) The consequences of HRS § 444–25.5(d) fall under (1) HRS § 480–2(a) (1993), which declares "unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful and (2) HRS § 480–12 (1993), under which any contracts involving such unlawful practices are "void and ... not enforceable at law or in equity." Therefore, based upon the plain language of the above statutes, a contractor who fails to provide written and verbal notice and disclosure of lien rights and bonding options to homeowners prior to entering into a construction contract may not enforce the contract against the owner and, consequently, is not entitled to a mechanic's lien upon the property. *Hiraga v. Baldonado,* 96 Hawai'i 365, 371, 31 P.3d 222, 228 (App.2001) (holding that a contractor who complied with the requirements of HRS §§ 444–25.5(a), but failed to comply with the requirements of HRS § 444–25.5(b) was not entitled to a lien on the property because "[t]he combination of HRS §§ 444–25.5(d) and 480–12 caused the [construction] contract to be void and ... not enforceable at law or in equity" (internal quotation marks omitted)). Keeping the aforementioned statutes and principles in mind, we now turn to address the parties' contentions.

### A. 808 Development's Appeal

**1. Whether the Circuit Court Erred in Dismissing 808 Development's Lien Application for Failure to Comply with HRS § 444–25.5**

808 Development contends that, despite its admitted failure to comply with HRS § 444–25.5, the circuit court erred in dismissing its lien application because: (1) it disregarded the Hawai'i legislature's intent in enacting Hawaii's mechanic's lien statute and HRS § 444–25.5, as well as erroneously concluded that its terms are mandatory; (2) its ruling was inconsistent with *Hiraga;* and (3) the dismissal of the lien application was "absurd," "unjust," and inconsistent with legislative intent. Owners and ASB counter that the circuit court correctly dismissed 808 Development's lien application by strictly construing and enforcing HRS § 444–25.5, consistent with the holding in *Hiraga.*

In the instant case, 808 Development furnished labor and/or materials for the improvements on the subject property and applied for a lien, pursuant to HRS § 507–42. Under HRS § 444–25.5(c), Owners owned the subject property and, therefore, qualify as "homeowners" entitled to the protections of the statute. However, it is undisputed that 808 Development did not provide to Owners the lien disclosure notices before or upon signing of the contract or prior to the commencement of work as required by HRS § 444–25.5(a). 808 Development's conduct was, therefore, an "unfair or deceptive practice" that renders its contract "void and . . . [un]enforceable at law or in equity" under HRS § 480–12. *See* HRS § 444–25.5(a). Accordingly, based on the plain language of the relevant statutes, 808 Development is not entitled to a lien upon Owners' property, and the circuit court did not err in dismissing its lien application.

Nevertheless, 808 Development maintains that this court should look to the legislative intent in enacting HRS § 444–25.5 because it believes, essentially, that the statutory requirements are directory rather than mandatory. We, therefore, address whether the circuit court's dismissal was contrary to the legislative intent of the statute.

## 2. Whether the Dismissal of 808 Development's Lien Application was Contrary to the Legislative Intent of the Statute

### a. *whether HRS § 444–25.5 is mandatory or directory*

808 Development asserts that the circuit court erred in strictly applying the statutory requirements to its construction agreement. Relying on *Jack Endo Elec., Inc. v. Lear Siegler, Inc.*, 59 Haw. 612, 585 P.2d 1265 (1978), 808 Development urges this court to examine the statute's legislative history to determine whether the statute at issue is "mandatory or directory."

ASB and Owners maintain that the circuit court's ruling was wholly consistent with the plain language of HRS § 444–25.5 and that this court's decision in *Jack Endo* is consistent with the circuit court's determination that 808 Development was required to comply with the statute.

"Historically this court has strictly construed the procedural requirements of the mechanic's and materialman's liens law, while liberally construing the remedial portions thereof." *Moore v. Tablada*, 68 Haw. 228, 229, 708 P.2d 140, 141 (1985) (citing *Hawai'i Carpenters' Trust Funds v. Aloe Dev. Corp.*, 63 Haw. 566, 572–73, 633 P.2d 1106, 1110 (1981); *Lewers & Cooke, Ltd. v. Wong Wong*, 22 Haw. 765, 768 (1915)). As previously indicated, HRS § 444–25.5 states that licensed contractors "shall" provide verbal notice and disclosure of lien rights and bonding options and "shall" obtain a signed writing that includes the information explained verbally. Generally, the word "shall" as used in statutes is construed as imperative or mandatory. *See Leslie v. Bd. of Appeals of County of Hawai'i*, 109 Hawai'i 384, 393–94, 126 P.3d 1071, 1080–81 (2006); *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 256, 47 P.3d 348, 371 (2002). In certain situations, however, the word "shall" may be construed as directory. *See Jack Endo*, 59 Haw. at 617, 585 P.2d at 1270.

[I]f the provision is mandatory, the failure to follow it will render the proceeding to which it relates illegal and void. If the provision is directory, however, the observance of the provision will not be necessary to the validity of the proceeding.

. . . In determining whether a statute is mandatory or directory[,] the intention of the legislature must be ascertained. *The legislative intent may be determined from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other.* In general, a statute is directory rather than mandatory if the provisions of the statute do not *relate to the essence of the thing to be done or where no substantial rights depend on compliance with the particular provisions and no injury can result from ignoring them.*

*Id.* at 616–17, 585 P.2d at 1269 (citations, internal quotation marks, and ellipsis omitted). In other words,

[a] crucial difference between statutes considered directory and those deemed mandatory arises from the consequences of noncompliance. A failure to follow the

former is unattended by serious legal consequences; a neglect of the latter may invalidate a transaction or subject the transgressor to legal liabilities. Where there is a manifest necessity for strict compliance or a clear expectancy thereof, the provision is accorded mandatory status and the administrative agency's power to act may hinge upon precise adherence to the law.... And the word "shall" may be held to be merely directory, *when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual,* by giving it that construction.

*Perry v. Planning Comm'n of the County of Hawai'i,* 62 Haw. 666, 676–77, 619 P.2d 95, 103 (1980) (emphases added) (citations and some internal quotation marks omitted).

In *Jack Endo,* this court determined that a provision in HRS § 507–43 (Supp.1973) was directory. 59 Haw. at 618–19, 585 P.2d at 1270. HRS § 507–43 required any person claiming a lien to provide a copy of the lien application and notice of lien "upon the *owner* of the property and any person with an interest therein and upon the party or parties who contracted for the improvements[.]" The contractor had provided notice of the lien application to the lessee of the property and the developer who had contracted for supplies, but failed to provide notice to the fee owner. This court held that:

> [The contractor's] failure to name and serve notice of the lien on the fee owner of the subject property resulted in exempting the interest of the fee owner from the lien. Consequently, the fee owner was not substantially prejudiced by not receiving notice of the lien. Thus, the notice provision of HRS § 507–43 (Supp.1973) calling for the naming and service of notice upon "the owner of fee title to the property *and* upon the party or parties who contracted for the improvements if other than the fee owner" is directory rather than mandatory. Further, the failure to strictly comply with the directory provisions of the statute will not invalidate the lien as to [the developer] and [the lessee]. [The developer and the lessee] were properly named and served with notice of the lien. The lien is only effective as to their respective interests in the subject property.

*Id.* (emphasis in original). In sum, the determination of whether HRS § 444–25.5's requirements are mandatory or directory involves a consideration of: (1) the nature and object of the statute; (2) whether the provisions relate to the essence of the statute's purpose; (3) the consequences of noncompliance; and (4) whether the substantial rights of the parties depend on compliance with the statute.

First, the provisions of HRS § 444–25.5(a) are procedural and not remedial inasmuch as they relate to the specific actions a contractor must take to preserve its right to a lien. *See Moore,* 68 Haw. at 229, 708 P.2d at 141. Second, the express purpose of HRS § 444–25.5 is to "have an informed homeowner who can and will avoid the double pay situations caused when the homeowner pays the prime contractor, the prime contractor does not pay the sub-contractors and/or materialmen, and the latter assert their lien rights against the homeowner." *Hiraga,* 96 Hawai'i at 369, 31 P.3d at 226 (citation omitted); *see* Sen. Stand. Com. Rep. No. 717, in 1975 Senate Journal, at 1104. Thus, the statute's notice and disclosure requirements under HRS § 444–25.5(a) relate to the "essence" of the statute, *i.e.,* the education of homeowners. Third, the consequences to the contractor for failure to comply with such requirements are unenforceability of the contract and exposure to the penalties under HRS § 480–13 (Supp. 2000), which provides:

> **Suits by persons injured; amount of recovery, injunctions.**
>
> ....
>
> (b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:
>
> (1) May sue for damages sustained by the consumer and, if the judgment is for the plaintiff, <u>the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained</u>, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit[.]

(Bold emphasis in original.) (Underscored emphasis added.) And, finally, the substantial rights of the parties are affected because

a contractor's ability to attach a lien to the homeowner's property "depend[s] on compliance with the particular provisions" of HRS § 444–25.5. Moreover, an injury that can result from ignoring the statutory provisions is that a homeowner who has not been provided the requisite notice and disclosure may have his or her property subject to a mechanic's lien that could result in the homeowner being placed in precisely the kind of double pay situation that the legislature intended to protect against. Given the above factors, the express statutory provisions of HRS § 444–25.5 should be construed as mandatory rather than directory. The ICA reached the same conclusion in *Hiraga*. In that case, a contractor sought to impose a mechanic's lien against the homeowner's property. Although the contractor admittedly failed to obtain a signed disclosure notice under HRS § 444–25.5, he argued that, because he had discussed lien and bonding rights with the owner, the owner did not need the protections of that statute, and, therefore, he was entitled to a mechanic's lien. The ICA acknowledged that the verbal disclosure arguably met HRS § 444–25.5's purpose of ensuring that homeowners are educated to avoid facing double pay situations. *Hiraga*, 96 Hawai'i at 369, 31 P.3d at 226. However, the ICA concluded that:

> HRS § 444–25.5 requires the contractor to give the homeowner specific oral information and to obtain the homeowner's signature on a written form containing specified information printed in specified size type. The oral and written information pertain to the "lien rights of all parties performing under the contract" and "the homeowner's option to demand bonding on the project, how the bond would protect the homeowner[,] and the approximate expense of the bond." *[The contractor]* contends that the requirements of HRS § 444–25.5 are not of interest in the instant case because this is a dispute solely between the homeowner and the contractor. However, even assuming no sub-contractors are involved, there is no indication that no materialmen are involved. More-

over, *HRS § 444–25.5 does not exempt from its requirements situations where neither sub-contractors or materialmen are involved.*

*Id.* at 371, 31 P.3d at 228 (emphases added). The ICA further noted that, even though the contractor was not entitled to a lien against the property, it was not completely without remedy inasmuch as it was still free to pursue its claims in *quantum meruit*. *Id.* at 372, 31 P.3d at 229.

Here, as in *Hiraga*, the circuit court dismissed 808 Development's lien application, but acknowledged that it is entitled to pursue its *quantum meruit* claims. 808 Development contends that the circuit court's ruling is inconsistent with *Hiraga* because it "explicitly found that the construction contract was *not void*." Such contention lacks merit because the circuit court did not so find. Rather, the court simply stated that it was "not saying there's an unenforceable or void contract" but that it was "saying a lien doesn't attach." Thus, the circuit court limited its ruling to a determination that the lien did not attach to the property but that 808 Development was entitled to pursue its claims in *quantum meruit*, which is consistent with the holding in *Hiraga*. Accordingly, we hold that the circuit court properly dismissed 808 Development's lien application pursuant to the mandatory language found in HRS § 444–25.5.

> b. *whether the dismissal of 808 Development's lien application was an "absurd and unjust" result given the knowledge of the Owners regarding lien and bonding issues*

808 Development maintains that "the purpose [of HRS § 444–25.5] ... is to educate homeowners about potential 'double-pay' situations and to reduce the number of claims against the Contractor's Recovery Fund,"[14] and not to protect "non-paying homeowners" such as Murakami and Isobe. 808 Development further asserts that Owners are not the type of "homeowners" the legislature meant

14. Under HRS § 444–26 (Supp.2004), persons who have been injured by an act, representation, transaction, or conduct of a licensed contractor which is in violation of Chapter 444, are allowed to recover damages from the Contractor's Recovery Fund in an amount not more than $12,500 per contract, and upon order by the circuit court or district court.

for the statute to protect because they are "sophisticated developer[s], fully educated about lien and bond rights, who gave the contractor legal advice for the contract at issue, to avoid payments [for] improvements to [their] property." In support of its aforementioned contentions, 808 Development relies upon *Overberg Decorating Center, Inc. v. Selbah Properties*, 741 S.W.2d 879 (Mo.Ct. App.1987), for the proposition that strict compliance with HRS § 444–25.5 is not necessary where the owner is sophisticated and knowledgeable about lien and bonding issues.

ASB asserts that, if this court were to permit the attachment of 808 Development's mechanic's lien, such holding would create a vague case-by-case standard that is less practical than the bright-line standard set forth by the ICA in *Hiraga* because "home-owners do not divide neatly into two discrete categories of 'knowledgeable about lien and bonding rights' and 'not knowledgeable about lien and bonding rights.'" ASB further argues that HRS § 444–25.5 is a consumer protection statute and, thus, it is designed to protect "*all* consumers, not just the unsophisticated ones." (Emphases in original.)

In its reply brief, 808 Development counters that, by ruling in its favor, this court need not create a vague case-by-case standard because the holding could be limited to the unusual circumstances of the instant case.

The plain language of HRS § 444–25.5 does not provide any exceptions to the statutory requirements that would exempt sophisticated homeowners or anyone else from its protections. Moreover, 808 Development's reliance on *Overberg* does not support its contention. In *Overberg,* the Missouri Court of Appeals allowed a mechanic's lien to attach despite the contractor's failure to provide the owner with the required statutory notice. Under the Revised Statutes of Missouri (RSMo) § 429.012, an original contractor must provide the owner with written notice regarding lien rights prior to the first invoice as a condition precedent to the validity of a mechanic's lien. *Overberg,* 741 S.W.2d at 880. In that case, the contractor agreed to deliver certain labor and materials to the owner. The parties disputed whether a contract provision discussing lien obligations fulfilled the notice requirements.

The *Overberg* court concluded that the contractor had "substantially complied" with the statutory notice requirements and that it "went further by providing the owner with protection from hidden liens." *Id.* at 881. The court further noted that the owner was a sophisticated corporation that the legislature did not intend to protect with the notice requirements, but limited its holding to the particular circumstances of that case. *Id.*

In *White River Development Co. v. Meco Systems, Inc.,* 806 S.W.2d 735 (Mo.Ct.App. 1991) [hereinafter, *White River*], the Missouri Court of Appeals addressed the effect of its prior holding in *Overberg* on a situation involving a contractor who had not complied with the notice requirements and sought to assert a lien against a knowledgeable developer. The *White River* court noted that:

> Meco [ (the contractor) ] admits that it did not give the notice. Relying primarily upon [*Overberg* ], Meco contends that as White was a knowledgeable developer who understood the mechanic's lien law, the notice was not required. Although *Overberg* contains language supporting Meco's position, there, notice substantially equivalent to that required in the statute was given.
>
> As Meco suggests, the purpose of the statute is to warn inexperienced property owners of the danger to them which lurks in the mechanics' lien statute. However, the statute does not limit the necessity of this notice to those inexperienced with, or having lack of knowledge about, the mechanics' lien laws.
>
> *The statute has no exceptions.* When a statute is without exceptions, courts should not create them. *Allowing a lien when there was not substantial compliance with this section would add another issue to each mechanic's lien case, the property owner's knowledge of the mechanic's lien law.* It seems unlikely the legislature intended such a result, as there are no limitations or exceptions to the giving of the notice. Meco is not entitled to a mechanic's lien.

*Id.* at 738 (citations and internal quotation marks omitted) (emphases added). In *Gauzy Excavating and Grading Co. v. Kersten*

*Homes, Inc.,* 934 S.W.2d 303 (Mo.1996) (en banc) [hereinafter, *Gauzy* ], the Missouri Supreme Court echoed the appeals court's holding in *White River.* In *Gauzy,* a mechanic's lien was invalidated over the contractor's objection that its escrow agreement with the developer provided "even greater protection than that provided by the statutory notice." *Id.* at 305. In requiring strict compliance with the statutory notice requirements, the Missouri Supreme Court stated that:

> Even under *Overberg,* the original contractor must provide 1) notice in writing and 2) notice that comports with the words used in the statute. Gauzy [ (the contractor) ] failed to satisfy these conditions.

> As stated, the Court of Appeals emphasized that its holding in *Overberg* should be limited to its facts.... We decline to extend *Overberg* .... To do so would run contrary to the longstanding precedent of requiring strict compliance with the statute. That precedent is based in part on a concern that *recognition of exceptions to the statute that excuse knowledgeable developers and others who are sophisticated in the areas of real estate and construction will likely result in a plethora of case-by-case determinations.* The bright-line rule mandated by the statute gives the best guidance to owners and contractors alike.

*Id.* at 305–06 (emphasis added) (citations omitted).

In the instant case, as in *White River* and *Gauzy,* the contractor, 808 Development, did not comply with or even substantially comply with the statutory notice requirements for mechanic's liens. In addition, like the Missouri statute, HRS § 444–25.5 provides no limitations or exceptions to the notice requirements. Therefore, we believe that the Missouri courts' concerns that (1) "[a]llowing a lien when there was not substantial compliance with [the notice requirements] would add another issue to each mechanic's lien case," *White River,* 806 S.W.2d at 738, and (2) the "recognition of exceptions to [HRS § 444–25.5] that excuse knowledgeable developers and others ... will likely result in a plethora of case-by-case determinations[,]" *Gauzy,* 934 S.W.2d at 305–06, are applicable here. Consequently, we decline to create an exception to the clear statutory requirements of HRS § 444–25.5 and, instead, adhere to a

bright-line standard that provides clear guidance to owners and contractors alike. Furthermore, as the circuit court stated, 808 Development may still pursue its claims in *quantum meruit;* therefore, 808 Development is not without a remedy. Accordingly, we hold that the circuit court's dismissal of 808 Development's lien application was not "absurd and unjust."

### 2. Whether the Circuit Court Erred in Denying 808 Development a Continuance Under HRCP Rule 56(f)

■ 808 Development next contends that the circuit court erred in denying its motion for a continuance because "federal courts, in dealing with the identical provision in Rule 56(f) of the Federal Rules of Civil Procedure (FRCP), construe the rule liberally." 808 Development maintains that a continuance should have been granted because Owners "had produced their discovery responses to 808 Development less than 24 hours before the hearing on the motion to dismiss[, which, as previously indicated, was consolidated with the probable cause hearing on the lien application] and that additional time was needed to analyze the discover and present facts essential to 808 Development's opposition" to the motion to dismiss (and, presumably, in support of its lien application). 808 Development alleges that it was prejudiced not only "by being denied adequate discovery to oppose the motion to dismiss, but [also] by losing its own priority in the foreclosure action."

Owners counter that 808 Development "was afforded much more time than [HRS] § 507–43 actually prescribes." Owners also argue that the motion was inappropriately brought under HRCP Rule 56(f) when the dismissal was made pursuant to Rule 12(h)(3) and was not a summary judgment motion under Rule 56(b). Owners argue that 808 Development's failure to investigate the facts prior to filing its lien application and requesting extensive discovery after the fact was a violation of its lawyer's professional duties.

ASB agrees with Owners that the circuit court acted within its discretion in denying 808 Development's motion for a continuance. Specifically, ASB maintains that "808 Development failed to identify information that it reasonably expects to obtain through discov-

ery that will assist in overcoming the Motion to Dismiss." In addition, ASB contends that:

808 Development's only specific argument was that additional discovery might allow it to obtain a signed copy of the amendment to the construction contract, which amendment allegedly addressed lien and bonding issues ... [but] th[at] amendment is irrelevant because it was not entered into, if at all, until after 808 [Development] had started construction on the [s]ubject [p]roperty. HRS § 444–25.5(b) requires the notices and disclosures to be included in the contract before work starts. As a result, potential discovery regarding this amendment is irrelevant to the issue at hand.

■ HRS § 507–43(a) provides in relevant part:

The Application [for a mechanic's lien] and Notice shall be returnable not less than three nor more than ten days after service. On the return day, a hearing shall be held by the court to determine whether probable cause exists to permit the lien to attach to the property. Any person to whom notice is required to be given shall be permitted to offer testimony and documentary evidence on the issue of whether probable cause exists to permit the lien to attach. If the person who contracted for the improvement from which the requested lien arises claims a set-off against the lienor or if any person to whom notice is required to be given otherwise disputes the amount of the requested lien, the court shall hear and receive all admissible evidence offered and shall only permit the attachment of a lien in the net amount which the court determines is the reasonable probable outcome of any such dispute. The return day hearing may be continued at the order of the court so that the entire controversy need not be determined on the originally scheduled return day. The lien shall not attach to the prop-

erty until the court finds probable cause exists and so orders. No such order shall be entered before the Application and Notice have been served on the party contracting for the improvement, the general contractor and the owner of the property, and they were given an opportunity to appear at the hearing.

(Emphases added.) As previously noted, see supra note 13, the circuit court's dismissal was more akin to summary judgment inasmuch as the court considered evidence outside the pleadings when it consolidated the probable cause hearing with the hearing on the motion to dismiss. Consequently, the rules applicable to summary judgment are appropriate under the circumstances here. With respect to continuances, HRCP Rule 56(f) states:

When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had[.]

(Italics in original.) (Underscored emphases added.) Generally, a motion to continue a hearing on a motion for summary judgment "must demonstrate how postponement of a ruling on the motion will enable him or her, by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact." Josue v. Isuzu Motors America, Inc., 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (internal quotation marks and brackets omitted).

Here, 808 Development initiated the mechanic's lien action on January 16, 2004, with a returnable date of January 22, 2004.[15] The circuit court, as permitted under HRS § 507–43(a), continued the probable cause hearing until March 2, 2004, a little over

---

**15.** It should be noted that the return and acknowledgment of service, filed January 20, 2004, indicated that Owners were served on January 17, 2004 and that ASB was served on January 20, 2004. Inasmuch as HRS § 507–43 provides that "[n]otice shall be returnable not less than three nor more than ten days after service," it appears that service upon ASB was late, i.e., given the return date of January 22, 2004, service

should have been perfected on or before January 19, 2004. However, the defect in service was not challenged by ASB below nor on appeal. Nevertheless, on January 22, 2004, the circuit court continued the probable cause hearing to March 2, 2004 at the request for 808 Development. Thus, any alleged procedural defect was harmless.

month after the return date. On February 4, 2004, 808 Development moved to continue the March 2, 2004 hearing, arguing that the hearing would require "significant formal discovery." 808 Development also argued that, there would be insufficient time for it to review responses to interrogatories and request for production of documents, take depositions, secure transcripts, and otherwise prepare for the March 2, 2004 hearing. Specifically, 808 Development asserted (via counsel's affidavit), *inter alia*, that:

> 8. On January 29, 2004, [Owners] served my office with their two volume memorandum in response to Plaintiff Jim Hogg's Motion for Summary Judgment in Civil No. 03–1–1712–08 (a related foreclosure case).
>
> 9. In Volume Two of that pleading, Exhibit C contains a listing of checks [Owners] claim were paid to [808 Development] for the construction work[.] [H]owever, in order to determine what the checks were used for and what other payments [808 Development] made to Respondents Joseph Spadaro, John Spadaro, and Jim Hogg on behalf of [Owners], it has become necessary to do discovery of these other respondents.
>
> . . . .
>
> 12. Even if respondents all stipulate to provide full and complete responses by February 10, 2004, there will be insufficient time to review the responses, prepare to take depositions of Respondents, schedule and take depositions, obtain written deposition transcripts, review the transcripts and prepare the direct testimony, and prepare for the [p]robable [c]ause [h]earing on March 2, 2004.

808 Development, however, failed to explain or describe how additional discovery would enable it to overcome the fact that it had not complied with the express statutory requirements of HRS § 444–25.5 such that probable cause would exist for the court to permit the attachment of a mechanic's lien on the property. As previously indicated, the verbal and written notice requirements prescribed under HRS § 444–25.5 must be perfected "upon or before signing the contract." Thus, even if the additional discovery sought by 808 Development resulted in the production of a signed copy of the purported August 2001 amended contract and confirmed that written disclosure of the lien and bond issues were met, the amended contract would not have saved its lien application inasmuch as construction had been ongoing since January 2001. Accordingly, we hold that the circuit court did not err in denying 808 Development's motion for a continuance and see no reason to disturb its ruling.

### B. *Owners' Cross–Appeal*

 Normally, pursuant to the "American Rule," each party is responsible for paying for his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent.

*Lee v. Aiu*, 85 Hawai'i 19, 32, 936 P.2d 655, 668 (1997) (citations omitted). Owners assert that they are entitled to an award of attorneys' fees and costs pursuant to the following three exceptions: (1) Rule 11 "as [808 Development]'s filing of its lien application" was frivolous, wholly lacking in any factual or legal support; (2) HRS § 607–14 as the prevailing party; and (3) HRS § 607–14.5 [16] as against frivolous claims.

---

16. HRS § 607–14.5 provides:

> **Attorneys' fees and costs in civil actions.** (a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).
>
> (b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request

### 1. Rule 11 Motion

HRCP Rule 11 provides in pertinent part:

(b) *Representations to court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleadings, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(Italics in original.) (Underscored emphases added.)

▇▇▇ Owners maintain that 808 Development's lien application "was frivolous[,] wholly lacking in any factual or legal support." Owners argue that 808 Development violated HRCP Rule 11 for the following reasons: (1) 808 Development was "allowed months of extra time to hunt for a signed written [bond and lien] disclosure" and failed to provide it at the hearing; (2) when confronted with the ICA's holding in *Hiraga,* it failed to address it in its reply; (3) when confronted with the express statutory requirements of HRS § 444–25.5 at the March 2, 2004 hearing, 808 Development's counsel "claimed that he knew where written bonding and lien rights disclosures signed by [Owners] could be found," yet he failed to produce them; and (4) "808 Development LLC is no longer operating and is merely a shell[;] [t]hus, unless Rule 11 sanctions are issued, 808 [Development] and its counsel will escape any consequences for [their] litigation abuse."

808 Development denies that its lien application was frivolous and argues that it did not violate the specific conditions upon which sanctions can be ordered pursuant to Rule 11(b). 808 Development argues that the unproduced amended contract did not demonstrate its failure to conduct reasonable investigation because (1) it had an unsigned copy of the agreement and (2) Sakatani (the owner of 808 Development) averred under penalty of perjury that an executed copy of the amended contract existed. Additionally, 808 Development contends that the absence of a signed amended contract does not render the entire lien application frivolous.

In adopting the abuse of discretion standard for appellate review of Rule 11 sanctions, this court noted that:

First, as the Supreme Court noted in *Cooter & Gell,* a Rule 11 inquiry is heavily fact-intensive, requiring careful consideration of the particular circumstances of each case, and involving questions of reasonableness, credibility and, often, motive. 496 U.S. [384] at 401–02, 110 S.Ct. [2447] at 2459[, 110 L.Ed.2d 359 (1990)]. Because

for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

(c) A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.

the [circuit] court is better positioned than an appellate court to marshall and weigh the pertinent facts, its determinations are due a substantial degree of deference. *Cf. Coll v. McCarthy,* 72 Haw.[20] at 28, 804 P.2d [881] at 886 [1991] ("Where · the court's conclusions are dependent upon the facts and circumstances of each individual case, the clearly erroneous standard of review applies.").

Second, we think Rule 11's mandate that attorneys and parties litigate responsibly and in good faith will be furthered by a unitary abuse of discretion standard of review. Deployed on the front lines of litigation, the [circuit] court "is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence." *Id.,* 496 U.S. at 404, 110 S.Ct. at 2460. Abuse of discretion review is better suited than *de novo* review as a means of ensuring that [circuit] courts' Rule 11 determinations will have real teeth, thereby "enhanc[ing] these courts' ability to control the litigants before them." *Id.*

*Matter of Hawaiian Flour Mills, Inc.,* 76 Hawai'i 1, 15–16, 868 P.2d 419, 433–34 (1994).

As previously mentioned, the probable cause hearing was scheduled for a little over one month after service of the lien application, *i.e.,* forty days. Thus, Owners' suggestion that 808 Development had *"months* of extra time" to search for the purported amended contract is somewhat exaggerated. In addition, the circuit court denied Owners' motion for Rule 11 sanctions based on its finding that 808 Development had argued for a "good faith extension of the law set forth" in *Hiraga.* In addition, 808 Development's failure to discuss *Hiraga* does not render its arguments frivolous because *Hiraga* promotes strict adherence to the requirements of the relevant statutes as they relate to a lien application, whereas 808 Development's arguments centered on why the court should exempt it from the strict statutory requirements. Moreover, 808 Development took the position that Owners did not need the required notice and disclosures because of their sophistication and knowledge of lien and bonding issues. Thus, 808 Development's failure to produce the amended contract does not render its arguments frivolous as they were not premised on the existence of the purported amended contract. Lastly, there is nothing in the record to suggest that the circuit court "clearly exceeded the bounds of reason" in refusing to sanction 808 Development. Accordingly, we hold that the circuit court did not err in denying Owners' Rule 11 motion.

### 2. HRS § 607–14

■ Owners contend that HRS § 607–14 provides "another statutory mechanism for reimbursing victims of frivolous lawsuits as 'prevailing parties' where the underlying dispute is in the nature of an *assumpsit* claim." (Emphasis in original.) They argue that the action is an assumpsit claim because "808 Development filed a claim in an attempt to secure and to enforce payment of an alleged contractual debt, by obtaining a secured position, as the first step in its recovery of damages."

808 Development responds that "[a]n application for a mechanic's lien is *not* an action in the nature of assumpsit, but rather is a creature of the mechanic's lien statute which must be strictly construed." It argues that the circuit court properly denied an award of attorneys' fees because Owners brought their claim for attorneys' fees under the assumpsit statute, HRS § 607–14, not the mechanic's lien statute, HRS § 507–47 (1993).[17] 808 De-

---

17. HRS § 507–47 provides in pertinent part that:
 The court having jurisdiction of the action to foreclose the lien shall have all of the powers pertaining to courts of equity, and in addition may direct the issuance of a writ of attachment or execution upon the motion of any party against the property of any other party, in the same manner as is provided in chapter 651 provided that the writ shall only issue where the claim upon which the motion therefor is based is upon a contract, express or implied, between the parties. *In addition to costs of the action the court may allow any fee or fees for legal services rendered by the attorneys for any of the parties,* and apportion the same as costs for payment by and between the parties or any of them, all as to the court seems equitable in the light of the services performed and the benefits derived therefrom by the parties respectively.
 (Emphasis added.)

velopment further asserted that Owners were not entitled to bring their claims under HRS § 507–47 because that statute provides for an award of attorneys' fees only for actions for *"foreclosure* of a mechanic's lien filed in circuit court" and not for "mere *application* of a mechanic's lien." (Emphases in original.)

As previously quoted, HRS § 607–14 provides in pertinent part:

> **Attorney's fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions *in the nature of assumpsit* and in all actions on a promissory note *or other contract in writing that provides for an attorney's fee,* there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]

(Emphasis in original.) "Assumpsit is a *common law* form of action which allows *for the recovery of damages* for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *Blair v. Ing,* 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001) (citation, internal quotation marks, and brackets omitted) (emphasis added).

Here, the lien application was brought pursuant to the mechanic's lien statute and, as such, is not a common law action. Moreover, the action was for the attachment of a mechanic's lien to the subject property, not for damages based upon the underlying contract. Therefore, the action was not in the nature of assumpsit; consequently, the circuit court did not abuse its discretion in denying Owners' motion for attorneys' fees pursuant to HRS § 607–14.

### 3. HRS § 607–14.5

Owners contend that HRS § 607–14.5 provides a third basis for an award of attorneys' fees where claims made by the other party are frivolous and not reasonably supported by the facts and the law. Owners disagree with the circuit court's finding that 808 Development made a "good faith argument for an extension, modification or reversal of existing law" and argues that the finding does not immunize 808 Development

from the application of HRS § 607–14.5 because

> no such argument as to [*Hiraga* ] was made by 808 [Development] until after the lower court announced its inclination at the March 2, 2004[ ] hearing, and even then the lower court was merely told that [808 Development's] counsel needed more time to subpoena a signed copy of the so-called amended construction contract[.]

808 Development counters that Owners' claim for an award of attorneys' fees and costs pursuant to HRS § 607–14.5 should be disregarded because it was not first challenged in the circuit court. Specifically, 808 Development contends that:

> In their July 30, 2004 Motion for Reconsideration, [Owners] contended they had a "statutory right to assumpsit fees and costs as the prevailing parties in this case, pursuant to [HRS § 607–14]." [Owners] made no request for attorneys' fees and costs. In their Motion for Attorneys' Fees filed on the same day, [Owners] moved for recovery of attorneys' fees and cost according to "the assumpsit statute, Section 607–14," with no request for attorneys' fees and costs pursuant to HRS § 607–14.5.

808 Development argues in the alternative that its claims were not frivolous but were made in good faith.

808 Development's contentions accurately describe the nature of Owners' claims for attorneys' fees under HRS § 607–14.5. At no time did Owners file a claim for attorneys' fees under that section; they fail to indicate in their opening brief where the argument was brought to the attention of the circuit court. We, therefore, decline to consider Owners' argument with respect to HRS § 607–14.5. *See* HRAP Rule 28(b)(4) (2004).

## IV. *CONCLUSION*

Based on the foregoing, we affirm both the circuit court's July 20, 2004 final judgment and October 28, 2004 amended final judgment.